(54 South. 579.)

Nos. 18,172 and 18,609.

Succession of HERBER.

(Jan. 30, 1911. Rehearing Denied March 13, 1911.)

(Syllabus by the Court.)

1. FIDEI COMMISSA—PERPETUAL TRUSTS—VALIDITY.

The clause in the will here interpreted, directing that certain real estate in New Orleans be sold and the proceeds deposited in a certain bank, the interest on the said deposit to be used, under the supervision of the executor, for the purpose of keeping in condition the tomb of the testatrix, contemplates a perpetual trust and a perpetual executor, provides no owner, now or hereafter, for the property referred to, and no administrator therefor after the death of the executor, and is therefore void.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 48, 54; Dec. Dig. § 7.*]

2. FIDEI COMMISSA—CONSTRUCTION — TRUSTS —VALIDITY.

The clause in the will now before the court which reads:

"I direct that the property situated on Exchange Alley * * * be rented by my said executor during the lifetime of my friend, Henry Lienhard * * * and, out of the proceeds of said rent, after paying all expenses incident to said property, my executor shall pay to the said Henry Lienhard the sum of $75 per month, and, at the death of Henry Lienhard, I desire that the said property be sold, and, out of the proceeds of said sale, my executor shall pay the Charity Hospital * * * the sum of $1,000, and shall pay the further sum of $1,000, for

the purpose of building a memorial * * * in memory of my deceased brother * * *"
—creates a trust, or fidei commissum, and attempts to introduce a tenure of property unknown to, and unauthorized by, our law, and is therefore void.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. § 38; Dec. Dig. § 4;* Trusts, Cent. Dig. §§ 3, 4.]

3. WILLS (§§ 2, 3*)—LEGACIES—GIFTS CAUSA MORTIS—PERSONS ENTITLED TO TAKE.

Article 1489, Civ. Code, denies to a minister of the Gospel the right to take, by donation mortis causa, from a person between whom and himself there is no tie of consanguinity and whom he attends, in his ministerial capacity, during the sickness of which such person dies, under a will made during such sickness, and that article has not been repealed by Act No. 2 of 1881 (2d Ex. Sess.) or otherwise; hence, where the conditions stated exist, a universal legacy in favor of the attending minister is void; nor does it affect the question that the will was made in another state where the testatrix and the minister lived, and where such dispositions are permitted, and that the will directs that the real estate owned by the testatrix in Louisiana be sold by the executor and the proceeds paid to the universal legatee. The law of Louisiana regulates the devolution of real estate here situated, and the proposition that, though the legatee could not take the property itself, the testatrix could order it to be sold by her executor and the proceeds paid over to him is untenable, as the courts will no more sanction an indirect, than a direct, violation of the law.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2, 3; Dec. Dig. § 2, 3.*]

4. TRUSTS—FIDEI COMMISSA.

Where, as in this case, the testatrix directs that certain property be held by her executor during the life of a third person, to whom a portion of the revenue is to be paid, and that it then be sold, and the proceeds, after the payment of certain particular legacies, paid over to her universal legatee, the whole disposition fails, and effect cannot be given to the universal legacy for the same reason that it cannot be given to the particular legacies, to wit, because they are equally within the prohibition of Civ. Code, art. 1520.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. § 38; Dec. Dig. § 4.*]

---

Appeal from Civil District Court, Parish of Orleans; Fred. D. King, Judge.

Proceedings for settlement of the Succession of Caroline Herber, widow of Joseph Herber. From a judgment annulling the will, J. S. Moore, individually and as execu-

tor, and another appeal. Amended and affirmed.

See, also, 119 La. 1064, 44 South. 888.

Theo. Roehl and Dinkelspiel, Hart & Davey, for appellants Moore and Lienhard. Farrar, Jonas, Goldsborough & Goldberg, for appellant Board of Administrators of Charity Hospital of New Orleans. Teissier & Teissier, for appellee Baumgartner. T. M. & J. D. Miller and Saunders, Dufour & Dufour, for appellees.

### Statement of the Case.

MONROE, J. The decedent died in Mississippi, where she had been residing, and left a will, reading, in part, as follows:

"I direct that my property, on St. Thomas street, between Josephine and St. Andrew, in the city of New Orleans, Louisiana, be sold by my executor and proceeds thereof deposited in the Germania Savings Bank, of New Orleans, Louisiana, and the interest on said deposit be used, under the supervision of my executor, for the purpose of keeping in condition my tomb in First Washington Cemetery, in said city of New Orleans, Louisiana.

\*        \*        \*        \*        \*        \*

"I direct that the property situated on Exchange Alley and Custom House, or Iberville, street, in the city of New Orleans, state of Louisiana, be rented by my said executor during the lifetime of my friend Henry Lienhard, of Biloxi, Mississippi, and, out of the proceeds of said rent, after paying all expenses incident to said property, my executors shall pay to the said Henry Lienhard the sum of $75 per month, and, at the death of said Henry Lienhard, I desire that the said property be sold, and, out of the proceeds of said sale, my executor shall pay to the Charity Hospital of New Orleans, the sum of $1,000, and shall use the further sum of $1,000 for the building of a memorial, in Biloxi, Mississippi, in memory of my deceased brother, William Creppel, Jr.

\*        \*        \*        \*        \*        \*

"All the residue of my estate, both real and personal, after complying with all requests herein, I bequeath unto Rev. J. S. Moore. I appoint the said J. S. Moore executor of my last will and testament, without bond."

Abraham Creppel, as the uncle and heir at law of the testatrix, brought suit to annul the will, on the grounds that the dispositions of real estate which have been quoted are void as substitutions, fidei commissa, and trusts, and that the disposition in favor of the Reverend J. S. Moore is void, because he is a minister of the gospel who attended the testatrix during her last illness, and is therefore incapable of taking under the will. It was held that the petition disclosed no cause of action for the nullity of the universal legacy, because it failed to allege that there was no tie of consanguinity between the testatrix and the universal legatee, and that, as the plaintiff had no interest in the particular legacies, which, if annulled, would fall into the residuum, the exception of no cause of action was properly maintained. Succession of Herber, 117 La. 239, 41 South. 559. The original plaintiff having died, another suit was brought by the present plaintiffs—a number of collateral relatives—and it was met by the exceptions of no cause of action and res judicata, which were maintained by the district court, whose judgment was, however, reversed on appeal, and the case was remanded for further proceedings according to law. Succession of Herber, 119 La. 1064, 44 South. 888.

The further proceedings were had and resulted in a judgment in favor of plaintiffs, annulling the will and recognizing them as owners, entitled to possession, of (1) a piece of real estate in square bounded by Exchange Alley, Iberville, Royal, and Canal streets, (2) two lots in square bounded by Fulton, or St. Thomas, Josephine, St. Andrew, and Chippewa streets, ordering the executor to account for rents and revenues received, if any, during his administration, and reserving plaintiffs' right to contest the validity of the inventory.

Rev. J. S. Moore, individually and as executor, appealed suspensively, and the Charity Hospital, separately and devolutively; the two appeals (Nos. 18,172 and 18,609) having, however, been consolidated by order of court and consent of parties.

### Opinion.

1. The direction that the St. Thomas street property be sold by the executor and the proceeds deposited in the Germania Savings Bank of New Orleans, and that "the interest on the said deposit be used, under the supervision of the (my) executor," for the purpose of keeping in condition the tomb of the testatrix, contemplates a perpetual trust, and a perpetual executor, whose seizin it undertakes to extend for the term of his life. The Germania Savings Bank, it may be remarked, en passant, is admitted to have passed out of existence, and though it is to be hoped that he will enjoy many years of life, the present executor may be called away from this world to-morrow, so that, if the court should attempt to give effect to the expressed wish of the testatrix, the property in question, for which no owner has been provided, now or hereafter, will, sooner or later, be left without even a trustee.

2. The next clause of the will is open to the same criticism as the first, in that the title to the property there referred to is left in nubibus, and the property itself is to be held by the executor, as trustee, during the life of Lienhard (though no disposition whatever is made of the revenues in excess of $75 per month), after which, and only then, it is to be sold, and the proceeds (less $1,000, to be paid to the Charity Hospital, and $1,000, to be expended on a memorial) paid to the universal legatee. Those dispositions would introduce a tenure of property obnoxious to the spirit and policy, if not the text, of our law. Mr. Justice Slidell, as the organ of this court, more than 60 years ago, referred to somewhat similar provisions in the will of Stephen Henderson as follows:

"It is said that the provisions of the will do not amount, in law, to a substitution or fidei commissum, and, consequently, are not reprobated by law. Conceding that they do not fall, technically, under either of these denominations, still they are clearly opposed to the policy of our laws and jurisprudence, which resist the perpetuation of estates. Their spirit is to prevent property from being tied up for a length of time in the hands of individuals, and placed out of the reach of commerce." Heirs of Henderson v. Rost, 5 La. Ann. 461.

Mr. Justice Rost, speaking for the majority of the court in another case, said:

"I do not see the possibility of recognizing trust estates here without letting in all the law which regulates that peculiar tenure of property. Counsel have referred us to no precedent that would authorize or justify the enforcement of such a title, and it is a self-evident proposition that the constitutional inhibition to the Legislature to adopt any system of foreign laws, by general reference, would be rendered nugatory, if courts of justice assumed the power to introduce those systems, piecemeal, in this insiduous manner." Succession of Franklin, 7 La. Ann. 412, 413.

Eustis, C. J., concurring, in the same case, said:

"I have no knowledge of any trust estate created under the laws of this state, nor of any case in which the legality of such an estate has ever been recognized by our courts. * * * I am under the conviction that the right which a man has to dispose of his property, by will, to take effect after his death, is derived exclusively from the law of the land, which has established this right as an incident to the right of the property. The law has * * * ordained certain forms and imposed certain conditions on this species of alienation which are essential to its validity. * * * A man has no more power to create new or prohibited modes of property, in the exercise of his right to make a will, than he has in a sale or a donation inter vivos. Between parties, they may hold their property by any tenure or terms they please; but, as to the establishment of titles affecting the property itself, there is no power in man out of the law. Nor has society any interest in attempting to carry into effect the conceits of the dead, to the disturbance of the rules of public order and policy which regulate the living." 7 La. Ann. 420, 421. See, also, Clague's Wid. v. Clague's Extr., 13 La. 7; Partee, Trustee, v. Succession of Hill, 12 La. Ann. 767; Succession of Kernan, 52 La. Ann. 48, 26 South. 749; Succession of McCloskey, 52 La. Ann. 1122, 27 South. 705; Succession of Ward, 110 La. 75, 34 South. 135; Orphan Society v. Y. M. C. A., 119 La. 278, 44 South. 15.

3. The evidence shows that the gentleman named as universal legatee is a minister of the gospel; that he attended the testatrix, in that capacity, during her last illness, when the will here attacked was made, and was

present on that occasion, and that there was no tie of consanguinity between him and the testatrix.

His learned counsel, in a supplement brief lately filed, suggest that it is not sufficiently proved that he (the universal legatee) attended the testatrix in his capacity as a minister. We, however, consider the evidence on that point specific enough, when taken in connection with the fact that there has never before, either in the pleadings of the universal legatee, the testimony given by him, or the arguments presented in his behalf, been any denial of plaintiffs' allegation, made more than five years ago, that he attended the testatrix in his ministerial capacity.

It is said that there is nothing to show that the testatrix made the will here attacked during her last illness; but we find wholly unquestioned testimony to the effect that the testatrix died of cancer; that she had been afflicted with the disease for probably more than a year; that the will was made some 11 days before she died, at a time when she was very sick and when she realized that she was going to die. The fact that she sat up in a rocking-chair until the last is a matter of no significance. For aught that we are informed, she may have died in that position. In the Bidwell Case (Succession of Bidwell, 52 La. Ann. 744, 27 South. 281), to which we are referred, it appeared that the testatrix made her will in June, 1890, and died in May, 1897, and that, though she had some affection of the heart at the time she made her will, she died of some other disease.

As applicable to the facts stated, plaintiffs invoke article 1489 of the Civil Code, which reads:

"Doctors of physic or surgeons, who have professionally attended a person during the sickness of which he dies, cannot receive any benefit from donations inter vivos or mortis causa, made in their favor by the sick person during that sickness. To this, there are the following exceptions: 1. Remunerative donations, made on a particular account, regard being had to the means of the disposer and the services rendered. 2. Universal dispositions in

case of consanguinity. The same rules are observed with regard to ministers of religious worship."

It is said that the article quoted has been repealed by Act No. 2 of the second extra session of 1881; but we think not. That act amends section 682 of the Revised Statutes, which relates to corporations established for literary, scientific, religious, and charitable purposes, and provides, inter alia, that:

"No church corporation or minister of the gospel, for himself or the benefit of the church corporation, shall be allowed to accept a bequest made in articulo mortis."

It does not touch the question of donations mortis causa, made during the last illness of the donor, but prior to the last moment of such illness, and hence does not repeal the existing law on that subject.

It is said that the disposition in favor of the universal legatee was valid in Mississippi, where the will was made, and where the testatrix and the universal legatee appear to have been residing, and it is argued that, as the will directs that the real estate in Louisiana be sold, and the proceeds (after discharging the legacy of $1,000, in favor of the Charity Hospital, and expending $1,000 in the erection of a memorial to the memory of the deceased brother of the testatrix) paid over to the universal legatee, the bequest was a donation, mortis causa, of movable property, and hence, being valid according to the law of the domicile of the testatrix, where the will was made, should be sustained.

"The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed. But the effect of acts passed in one country, to have effect in another country, is regulated by the laws of the country where such acts are to have effect." Civ. Code, art. 10.

\*    \*    \*    \*    \*    \*    \*

"Persons who reside out of the state cannot dispose of property they possess here in a manner different from that prescribed by our laws." Civ. Code, art. 491.

A third paragraph of article 10, above quoted, provides that the exception contained in

the second paragraph shall not hold, in cases where the testator, being a citizen of another state, disposes of movable property here situated, by a will made out of this state, if, at the time of making such will and of his death, he resides and is domiciled out of this state; and it is settled that:

"It is only under the conditions mentioned in this article that our laws recognize and permit the operation of foreign laws on wills disposing of property here. In all other cases the law of this state is to govern." Succession of Senac, 2 Rob. 258; Estate of Lewis, 32 La. Ann. 388.

That the law of the place where it is situated regulates the devolution of real estate, is not, and cannot be, disputed, and it appears from the record that the only property that Mrs. Herber owned in Louisiana at the time of her death were the two pieces of real estate which have been heretofore mentioned. The argument which we are considering concedes that they could not lawfully have been devised to the universal legatee; but it is contended that it was competent for the testatrix to order that they be sold, after her death, and the proceeds paid over to a legatee. The proposition is untenable. The courts of this state can no more sanction an indirect, than a direct, violation of its laws, particularly those founded in public policy. Moreover, as the matter stands, the testatrix having attempted to regulate the disposition of the property in question by the two bequests which we have held to be void, the result of our sustaining the position of the universal legatee would be that he might take the property itself, on paying the legacies to the Charity Hospital and for the building of the memorial. Beyond that effect cannot be given to the universal legacy for the same reason that it cannot be given to the special bequests last above mentioned, to wit, because they are equally within the spirit and meaning of the prohibition of Civ. Code, art. 1520.

It appears that about a year after this litigation began, perhaps during the interval between the dismissal of the first suit and the institution of the second, the executor caused the St. Thomas street property to be sold, and subsequently ruled the adjudicatee into court and obtained a judgment compelling him to accept title, which he seems to have done; the proceeds of the property appearing upon an account which the executor has filed. Our learned Brother of the district court probably overlooked those facts in rendering the judgment which we are now reviewing, as he orders that plaintiffs be put in possession of said property, though the adjudicatee was not before him. The judgment will have to be amended in that particular.

It is, therefore, ordered, adjudged, and decreed that the judgment appealed from be amended by striking out so much of it as recognizes plaintiffs to be the owners, and orders that they be put into possession, of the two lots of ground on Fulton, or St. Thomas, street (being the property secondly described in said judgment) and by reserving to plaintiffs all rights that they may have with respect to said property; and it is further adjudged and decreed that, as amended, said judgment be affirmed, the costs of the appeal to be paid by the mass.