(57 South. 923.)

No. 19,163.

Succession of PLEASANTS.

(Feb. 26, 1912.)

*(Syllabus by the Court.)*

PERPETUITIES (§ 4*) — CREATION OF FUTURE ESTATE—FIDEI COMMISSUM.

By her last will, the testatrix bequeathed the rents of certain houses to her brother, who is her sole heir at law, "for life, to be sold after his death," and the rents of other houses to her aunt, "for life, to be sold after her death," and, after making certain particular bequests of money, declared: "I want my houses sold after the death of my aunt and brother and the legacies named above paid, and any balance to the Home for Incurables." She then named her executors, after which, she declared: "Any property I die possessed of, not herein disposed of, I desire my brother to have." *Held*, that the dispositions thus attempted to be made are void, as creating a fidei commissum, or tenure of property, prohibited by or unknown to our system of law, and as extending the authority of an executor and the term of his administration beyond the limits prescribed by our law.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–44; Dec. Dig. § 4;* Trusts, Cent. Dig. §§ 3, 4.]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

In the matter of the succession of Miss Elizabeth A. Pleasants. From a judgment annulling a portion of a will, Percy S. Benedict appeals. Affirmed.

Bernard McCloskey, for appellant. Walter L. Gleason, for appellee.

MONROE, J. The decedent left an olographic will, reading as follows (omitting the date and signature), to wit:

"I leave the rents of my houses, 3529 and 2531 Prytania street, to my brother George, for life, to be sold after his death. I leave the rents of my houses, 3441 and 3443 Prytania street, to my aunt Elizabeth, for life, to be sold after her death.

"I leave $500 to Father Lambert; $500 to the Home for Incurables; $1,000 to New Orleans Orphan Female Asylum; $1,000 to St. Vincent Orphan Asylum; $500 to the Lepers' Home, at White Castle; $500 to the Little Sisters of the Poor of the Sixth District; $300 for repairs to the family tomb in Metairie Cemetery. I leave my gold watch to Corinne Young. I leave my furniture in 3443 Prytania street to the Home for Incurables. I want my houses sold after the death of my aunt and brother and the legacies named above paid, and any balance to the Home for Incurables. I appoint Percy S. Benedict my executor, without bond. I nominate and appoint Geo. J. Pleasants, my brother, and Mrs. E. A. Pleasants, my aunt, joint testamentary (?) with seizin and without bond. Any property I die possessed of, not herein disposed of, I desire my brother to have. Thus entirely written, dated and signed by me," etc.

The brother referred to in the will is the sole heir at law of the decedent, and he has opposed the execution of the will, alleging:

"That the said last will of the deceased directs that the rents and revenues of certain of the real property left by her should be paid to your petitioner and to Mrs. Elizabeth A.

Pleasants, petitioner's aunt, during their respective lifetimes, and further directs that at the death of either of them said rents shall go to the survivor, and that upon the death of said survivor the executor shall cause said properties to be sold, and from the proceeds thereof that various pecuniary legacies shall be delivered to various charitable institutions therein named. Now, your petitioner represents that the aforesaid clause in said will * * * is null, void, and of no effect; that the same creates a trust or fidei commissum, and attempts to introduce a tenure of property unknown to and unauthorized by our law; that thereunder the naked ownership, or fee, in said property is vested in no one after the death of the deceased; and that such disposition of property is reprobated by our law, is against the public policy of the state, and is in contravention of its codal provisions. * * * "

He prays that the executor, Mr. Benedict, be cited, and for judgment annulling the will, "in so far as it attempts to divest and take away" from him "the full and entire ownership of the said properties, * * * together with the rents and revenues," and that he "be decreed the only brother and sole surviving heir at law of the said deceased, and, as such, entitled, in full ownership, to all the real property left by the said deceased and the balance of the proceeds of such real estate as has been sold," etc.

There was judgment in the district court as follows:

"It is * * * decreed that there be judgment * * * annulling, avoiding, and setting aside, as not written, the clause in the said will reading as follows, to wit: 'I want my houses sold after the death of my aunt and brother and the legacies named above paid, and any balance to the Home for Incurables.' It is further * * * decreed that, except as above stated, said will be upheld as legal and valid, the probate thereof * * * be maintained and perpetuated," etc.

Mr. Benedict, who alone qualified as executor, has alone appealed; and he admits that the case is similar to that of Succession of Herber, 128 La. 111, 54 South. 579, suggesting only that "the last clause of the will here presented might save the case" from the application of the doctrine of the case thus mentioned.

The codal provisions invoked by opponent read as follows:

"Art. 1520. Substitutions and fidei commissa are and remain prohibited. Every disposition by which the donee, the heir, or legatee is charged to preserve for, or return a thing to, a third person is null, even with regard to the donee, the instituted heir, or the legatee."

By the first clause of the will presented in the succession of Herber, the testatrix directed that certain real estate be sold by the executor and the proceeds deposited in a bank (which had gone out of existence), the interest to be derived therefrom to be used, under the supervision of the executor, in keeping the tomb of the testatrix in proper condition.

By the second clause, it was directed that the executor should rent other real estate during the life of one Lienhard, and pay him therefrom $75 per month, and, at his death, that the property should be sold, and from the proceeds that the executor should pay a special legacy in money, and should build a memorial to the memory of the deceased brother of the testatrix. The will contained a provision, in the nature of a universal bequest, reading as follows:

"All the residue of my estate, both real and personal, after complying with all requests herein, I bequeath unto [a person named]."

The person so named was found to be incapable of accepting the bequest; but, apart from that, it was held that the first clause of the will contemplated a perpetual trust and a perpetual executor, would eventually leave the property without owner or administrator, and was therefore null.

"The next clause [the opinion goes on to say] is open to the same criticism as the first, in that the title to the property there referred to is left in nubibus, and the property itself is to be held by the executor, as trustee, during the life of Lienhard (though no disposition whatever is made of the revenue, in excess of $75 per month), after which, and

only then, it is to be sold, and the proceeds (less $1,000, to be paid to the Charity Hospital, and $1,000, to be expended on a memorial) paid to the universal legatee. These dispositions would introduce a tenure of property obnoxious to the spirit and policy, if not the text, of our law. * * *"

And this court then quotes from the opinions of Slidell, J., and Eustis, C. J., in the matter of the Heirs of Henderson v. Rost, 5 La. Ann. 461, and cites other cases, among which is Succession of Ward, 110 La. 75, 34 South. 135, in which it was held (quoting the syllabus):

"Where a testament appoints an executor, with bond, and directs that a certain amount shall be paid monthly to a person named, and that, during the life of that person, the estate shall be kept intact, and at the death of that person shall go to two other persons, share and share alike, and that to the two latter persons, one of whom is the executor, shall go all monthly surplus after the 'usufruct' to the first, *held*, that the instrument evidences an intention that the executor shall hold the estate in trust during the life of the so-called usufructuary, and that this is to create a fidei commissum, forbidden by our law under pain of the nullity of the will. * * * A person to whom, out of the revenues of an estate, a certain amount is to be paid monthly is not a usufructuary."

In the instant case, it will be observed that the title to the property in question is vested in no one; and, although it is not so specified in the will, it would devolve upon the executor to hold and administer it until the deaths of the aunt and brother of the testatrix, to whom the revenues are bequeathed, and then sell it and, after paying certain particular legacies, turn over the balance of the proceeds to the Home for Incurables. The clauses attacked are therefore obnoxious to the objections that were urged in the cases cited, the doctrine of which finds support in other decisions, both earlier and later, some of which are collated ·in the opinion in the matter of Succession of Le Blanc, 128 La. 1055, 55 South. 672.

The judgment appealed from is accordingly affirmed.