LAND, Justice.
 

 This is a suit by J. E. Buck,
 
 trustee
 
 for certain creditor insurance companies and agencies of the Opelousas Insurance Agency, Inc., against Henry D. Larcade, Jr., former president of that insurance agency, on certain items aggregating $2,981.25, alleged to be due by^ reason of an
 
 “agreement of trusteeship,”
 
 entered into by the Opelousas Insurance Agency, Inc., and certain insurance companies and agencies, represented in that agreement by J. E. Buck,
 
 trustee,
 
 and also by reason of certain subsequent acts alleged to have been committed by the defendant, Henry D. Larcade, Jr., in the operation of the Opelousas Insurance Agency, Inc.
 

 Judgment was rendered in the district court in favor of plaintiff against defendant in the full amount claimed, with legal interest from judicial demand, and defendant has appealed.
 

 1. Defendant first filed a motion and prayer for oyer, calling upon J. E. Buck, trustee, to disclose the names of his principals and to produce the power of attorney, procuration, or authority upon which plaintiff institutes and intends to prosecute this litigation. Tr. vol. 1, p. 30.
 

 To the motion for oyer, plaintiff, J. E. Buck, trustee, filed an exception, including the following allegation: “The plaintiff is
 
 a trustee and not an agent
 
 and holds the
 
 legal title
 
 to all accounts, claims and demands sued on herein, and, hence, he, and he alone, can sue on them.” Tr. vol. 1, p. 31. (Italics ours.)
 

 The district judge maintained plaintiffs exception to the motion and prayer for oyer.
 

 2. Defendant then filed an exception of no cause or right of action, and, before any evidence had been offered on behalf of plaintiff, made the following general objection, which was referred to the merits by the district judge: “All evidence in support of the demands of the plaintiff in this suit is objected to on the grounds subsequently stated in the prayer for oyer and on the further ground 'that plaintiff has-shown no cause or right of action to institute and prosecute this suit. The prayer for oyer and the exception taken to the ruling of the Court on the prayer for oyer are here reiterated in opposition to any testimony of any character being introduced, and it is understood between Counsel for the plaintiff and defendant and acquiesced in by the Court that this general objection shall stand throughout the case without fhe necessity of reiterating it.
 

 “Objection referred to the merits.” Tr. vol. 2, p. 1.
 

 As the case was decided upon the merits, it follows, necessarily, that the exception of no right or cause of action and the general objection to the admissibility of testimony made by defendant were both overruled by the trial judge.
 

 Under these issues, the clear-cut and sole question presented for decision is: Does the petition of plaintiff, alleging himself to be a
 
 “Trustee”
 
 of certain creditor in
 
 *573
 
 surance companies and agencies, and suing solely under an “agreement of trusteeship,” allege under the laws of this state a cause or right of action against defendant, for an indebtedness averred to have arisen under such trust agreement?
 

 The issue is squarely presented by plaintiff in his exception to the prayer for oyer by stating therein that: “The plaintiff is
 
 a trustee and not an agent.”
 
 (Italics ours.) The agreement of trusteeship is therefore a trust, pure and simple, and not a mandate of agency.
 

 Plaintiff advances as his authority for bringing this suit the case of Buck v. Haas, 180 La. 188, 156 So. 217. In that case, which was litigation in connection with this same Opelousas Insurance Agency, Inc., and involving this same trust agreement dated February 16, 1932, this court held that the plaintiff, the same J. E. Buck, had authority to bring that action
 
 as trustee on certain promissory notes
 
 which were transferred to him by the terms of the trust agreement,
 
 and in addition were indorsed to the order of said Buck, as trustee.
 

 In discussing this agreement of trusteeship in the opinion, the court said (180 La. 188, at page 192, 156 So. 217, 219) : “There is nothing in law objectionable to a contract so providing. It is true that the statutes of this state, save to a limited extent, as in wills, have not established the common law trust, but here we have a contract, which contains nothing objectionable to the laws of this state, using words and terms, which to give them effect, in accordance with the clear intention of the contracting parties, must be interpreted
 
 in the light of the common law,
 
 which the contracting parties evidently had in mind.” (Italics ours.)
 

 And further quoting from the opinion, (180 La. 188, page 194, 156 So. 217, 219): “Plaintiff’s capacity to sue on the notes is clear
 
 under section 51 and section 191 of Act No. 64 of 1904
 
 (Negotiable Instruments Act). Section 51 reads: ‘The holder of a negotiable instrument may sue thereon in his own name; and payment to him in due course discharges the instrument.’1 Section 191 says that the word ‘ “holder” means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof.’ The notes sued upon were indorsed by the insurance agency to the order of J. E. Buck, trustee, and were in his possession at the time suit was instituted.
 
 Therefore, plaintiff here fulfills all the requirements of the statute.”
 
 (Italics ours.)
 

 In other words, the opinion in Buck v. Haas, under discussion, holds that, since “there is nothing in law objectionable- to a contract so providing,” meaning the appointment of a trustee by agreement of trusteeship, for this reason the indorsement of the notes sued on by the insurance agency to “J. E. Buck, Trustee,” did not operate to exclude the notes so indorsed from the operation of Act No. 64 of 1904, Negotiable Instruments Act.
 

 Since, in the case of Buck v. Haas, supra, the contracting parties were called to, and representatives did assemble in, Opelousas, La., and, apparently the “Agreement of Trusteeship,” dated February 16,
 
 *575
 
 1932 (Tr. vol. 1, p. 59), was executed in Opelousas, La., and the principal effect of that agreement was to take place there, it is difficult to understand how the parties could enter into a contract in this state, to have effect here, to he interpreted
 
 "in the light of the common law,”
 
 in view of article 13 of the Code of Practice, which provides that: “The forms, the effects, and the prescription of actions, are governed by the law of the place where they are brought;' but contracts are governed by the law of the place where they were entered into.”
 

 To the same effect is article 10 of the Civil Code, which reads as follows: “The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed.
 

 “But the effect of acts passed in one country to have effect in another country, is regulated by the laws of the country where such acts are to have effect.
 

 “The exception made in the second paragraph of this article does not hold, when a citizen of another State of the Union, or a citizen or subject of a foreign State, or country, disposes by will or testament, or by any other act
 
 causa mortis
 
 made out of this State, of his movable property situated in this State, if at the time of making said will or testament, or any other act
 
 causa mortis,
 
 and at the time of his death, he resides and is domiciliated out of this State.”
 

 Since the opinion in Buck v. Haas was written, Act No.
 
 107
 
 of 1920 has been repealed by Act No. 7 of the Third Extraordinary Session of 1935, which eliminates common-law trusts, even in wills, from the statutes of this state.
 

 Considering these articles of the Code of Practice and Civil Code in connection with the “Agreement of -Trusteeship,” we are led to the anomaly of parties contracting in this state, with the intention of having the contract interpreted
 
 "in the light of the common law,”
 
 but with the Code of Practice and Civil Code prescribing the civil law as exclusively applicable, and with the further embarrassment of having in this state no statutory law whatever creating trusts or trustees.
 

 The decision in Buck v. Haas, supra, was probably justifiable, by reason of the actual indorsement of the notes which were the object of that litigation to the order of J. E. Buck, trustee, so as to bring the case within Act No. 64 of 1904, the Negotiable Instruments Law, a statute of this state; but, if that decision is to be interpreted as adopting, unreservedly, into the civil law of Louisiana common-law trusts and common-law trustees with functions similar to those enjoyed in common-law states, we do not hesitate to announce that the decision is contrary to the laws of this state, and will not be followed in the future by this court as a precedent.
 

 At all events, there is too much squinting at “common-law trusts” in that decision, as indicated by the following quotation from Buck v. Haas, 180 La. 188, page 192, 156 So. 217, 219: “Article 320 of the Code of Practice relates to suits brought by one «claiming to be an attorney in fact. A trus
 
 *577
 
 tee is not an
 
 agent.
 
 He has no
 
 principal.
 
 Taylor v. Davis, 110 U.S. 330, 4 S.Ct. 147, 28 L.Ed. 163. In an ordinary agency
 
 the title
 
 to any property involved remains in the principal and the agent acts in the
 
 name of the principal, hut in a trust, the legal title is in the trustee,
 
 and he acts in
 
 his own name. 2
 
 C.J.-p. 425, § 11.” (Italics ours.)
 

 In Gates v. Renfroe et al., 7 La.Ann. 569, it is said: “Trusts are unknown to our laws, and the only cases in which they have ever been enforced by our courts, are those of marriage settlements, which, so far as they create
 
 no new tenure of property,
 
 have been, by comity, assimilated to marriage contracts.” (Italics ours.)
 

 In Marks v. Loewenberg, 143 La. 196, 205, 206, 78 So. 444, 448, it is said: “Apart from the incapacity of the parties, the contract, having for its purpose the creation of a trust estate, is prohibited and unenforceable in this state. C.C. art. 1520; Heirs of Henderson v. Rost, 5 La.Ann. [441] 461; Succession of Franklin, 7 La. Ann. 395:
 

 “ ‘Fidei commissa, the trusts of the English law/ said this court in Partee, Trustee v. Succession of Hill, 12 La.Ann. 767, ‘cannot be created in Louisiana and enforced in our courts.’ Perin v. McMicken’s Heirs, 15 La.Ann. 154.
 

 “See, also, Succession of Beauregard, 49 La.Ann. 1176, 22 So. 348; Succession of Ward, 110 La. 75, 34 So. 135; Succession of Herber, 128 La. [111] 115, 54 So. 579; Succession of Pleasants, 130 La. [267] 277, 57 So. 923.”
 

 An estate in this state may be divided into naked ownership and usufruct, and a separate title as to each may be vested in different persons, under existing laws.
 

 But there are no “trust estates” recognized under our laws, with such new tenures of property as “legal title” in one person or entity and “equitable title” in another person or entity.
 

 The “legal title” which the “trustee” asserts in this case is derived solely from a “common-law trust agreement,” prohibited by our laws.
 

 The plaintiff has brought the present suit in his capacity as “trustee,” and as the avowed holder of the “legal title,” a title not recognized as valid in this state; and, for this reason, the exception of no cause or right of action should have been maintained as to the entire demand of plaintiff.
 

 Common-law “trust estates,” in the absence of appropriate legislation, will not be permitted to be created in this state by court decisions, and titles “legal” and “equitable,” tenures alien to the civil law, will not be permitted to be established thereby and vested in different persons. The functions of courts are not legislative but are purely judicial.
 

 This pronouncement is applicable, particularly in the instant case, in which
 
 plaintiff himself
 
 insists that
 
 he
 
 is
 
 "a trustee and not an agent
 
 and holds
 
 the legal title
 
 to all accounts, claims and demands sued on herein,
 
 and, hence, he, and he alone, can sue on them."
 
 Tr. vol. 1, p. 31. (Italics ours.)
 

 
 *579
 
 Nor will the evasive method of giving to “a trustee,” in fact, another name or quality, in order to validate a “legal title” arising from a “common-law trust,” be sanctioned by this court.
 

 There is no allegation in plaintiff’s petition to the effect that the suit is filed in conformity with Act No. 64 of 1904, the Negotiable Instruments Law, but, on the contrary, plaintiff, “as trustee,” sues on an open account statement, which is attached to the petition as Exhibit A (Tr. vol. 1, p. 28), in addition to complaining of certain alleged acts of defendant, in nowise identified with negotiable instruments.
 

 Indeed, plaintiff, “as trustee,” stands squarely and solely upon his alleged right as the holder of the “legal title” under a common-law “trust agreement,” as the basis of this suit, and does not pretend in his petition to,hold title under any statute of this state whatever.
 

 Defendant finally answered with full reservation of the pleas and exceptions theretofore filed.
 

 For the reasons assigned, it is ordered that the judgment appealed from be annulled and reversed.
 

 It is now ordered that there be judgment in favor of defendant, Henry D. Larcade, Jr., and against plaintiff, J. E. Buck, trustee, maintaining defendant’s exception of no cause or right of action as to plaintiff’s entire demand; and it is further ordered that plaintiff’s suit be dismissed at his costs.
 

 O’NIELL, C. J., and ROGERS and ODOM, JJ., dissent.