181 So. 540

**VINCENT et al. v. FARMERS BANK & TRUST CO.**

No. 34752.

May 2, 1938.

Bruner & Chambers, of Crowley, for appellant.

Spencer, Phelps, Dunbar & Marks, of New Orleans, for appellees.

PONDER, Justice.

This is a suit to recover $2,130.95 claimed to have been paid through error.

On February 21, 1931 a rice mill belonging to the Iota Rice Mill Company, Incorporated at Iota, Louisiana was destroyed by fire. On account of the Company being heavily involved in debt an agreement was entered into by the Company and its creditors on July 1, 1931 appointing G. Owen Vincent, J. E. Guidroz, Edward Daigle, Sol Weiss and A. J. Plough as trustees to administer the affairs of the Company and pay its debts. Under this agreement the Company transferred to the trustees in pledge and pawn, for the use and benefit of its creditors, all of its assets. It was provided in the agreement, viz:

"* * * that any pledge or mortgage lawfully given or granted by the debtor to any creditor shall not be affected or impaired by anything herein contained, and except, further, that secured creditors shall not participate in any money collected and paid out by the Trustees, except to the extent that their debts shall exceed the value of the securities held by them. Unless sufficient money is collected by the Trustees to pay in full all debts both secured and unsecured no distribution of money shall be made by the Trustees until it is definitely determined what deficiencies, if any exist in the securities held by the secured creditors. The intent of this agreement is that secured creditors shall participate in the general assets of the Debtor only to the extent that their debts shall exceed their securities and therefore it is now agreed and provided that such deficiency, if any, in the security held by the secured creditors shall be determined before any money is distributed by the Trustees."

and, "* * * no debt shall bear interest, except debts evidenced by notes, and all notes shall cease to bear interest from the date of this agreement, except that Creditors holding securities for their debts, which as of June 1st, 1931, they would be lawfully entitled to hold under the Bankruptcy Law, shall be entitled to and may collect interest on said debts, as provided in the notes held by them so far as the se-

curity held by them will permit; and provided further that if sufficient funds are realized by the Trustees to pay the principal of all debts not represented by notes and the principal of all debts represented by notes with interest to the date of this agreement, then out of any surplus in the hands of the Trustees interest on all notes shall be paid as stipulated in said notes."

On September 9, 1931 the trustees having collected insurance for the loss of the building and machinery to an amount exceeding $100,000 they, the trustees, declared a 50% dividend to the secured and unsecured creditors alike. The defendant was the holder and owner of a certain promissory note, dated November 10, 1930, drawn by the Iota Rice Mill Company, Inc., to the order of the defendant for the sum of $10,000, payable four months after date, bearing 8% per annum interest from maturity and secured by warehouse receipts on 4,000 pockets of Blue Rose Head Rice. The trustees paid the defendant $5,000 on September 9, 1931. The evidence shows that the trustees distributed 50% to all the creditors secured and unsecured at that time because banking conditions were unsettled and it is admitted that if the distribution had not been made to the creditors at that time the money would have been frozen in the banks. Counsel for the plaintiffs and defendants admit that it was a wise action on the part of the trustees to pay this amount to the creditors at that time. On March 10, 1932 certain insurance companies who had issued policies against the contents of the mill filed interpleader proceedings in the United States District Court for the Eastern District of Louisiana

in the matter entitled American Insurance Company et al. v. Iota Rice Mill Company, Inc., et al., No. 4 in equity, in which the complainants deposited in court $27,858.59, and prayed that the various creditors be served and decreed to interplead and settle among themselves their rights and claims in the amount so deposited. This amount deposited represented 80% of the value of the rice and other supplies that was destroyed in the fire and was the amount agreed upon as a settlement and compromise with the insurance companies. The defendant filed an answer to the interpleader proceedings claiming $5,699.64 of the amount so deposited. The defendant claimed that it was entitled to this amount of the deposit for the 80% of the insurance on the rice lost in the fire represented by the warehouse receipts which were pledged to secure its note. Prior to the final distribution of this deposit, on August 15, 1932 the trustees declared another dividend of 15% and paid that amount to all the creditors, secured and unsecured. The defendant was paid $1,500 on its claim. After this payment had been made judgment was rendered in the United States District Court in favor of the defendant for $4,012.43 which was paid to the defendant. The instant suit was brought by all the trustees except one, who is the president of the defendant bank, to recover the amount claimed to have been over paid to the defendant.

The defendant filed a plea of res adjudicata, an exception of no cause or right of action, a plea of estoppel and an exception of want of proper parties plaintiff and defendant. The court overruled the excep-

tions and pleas. On the trial of the case the lower court rendered judgment in favor of the plaintiff for $2,130.95 with legal interest from judicial demand from which judgment the defendant appeals.

Upon examination of the record we find the evidence shows that the reason the dividends were declared by the trustees and paid to all the creditors, secured and unsecured, was because of the unsettled conditions of the banks and their fear that this money might be lost or frozen if they did not pay it out. Counsel for both sides admit that it was a wise action on the part of the trustees. The evidence also shows that the dividends were paid to all the creditors as well as the defendant prior to the final disposition of the interpleader proceedings. If the trustees had held all the money in banks until the interpleader proceedings were disposed of, all or the greater part of the funds would have been frozen. There is nothing in the record to show that it was ever the intention of the trustees to violate the agreement appointing them trustees and the provision in the agreement providing the manner in which the debts should be paid. The payment of the 50% dividend and the payment of the 15% dividend to the defendant were mere tentative payments. Under the agreement the defendant could not participate in the money collected and paid out by the trustees except to the extent that its debt exceeded in value the securities held by it. The defendant was a party to this agreement as well as the trustees and all the other creditors. The defendant certainly cannot complain of these amounts having been advanced to them before they could realize on their securities even though they have to return the excess paid them. If the trustees had waited until the defendant realized on its securities the amount in excess of its securities which it was justly entitled to would have been frozen in the bank. Under the agreement the proper method to arrive at the payments to be made to the defendant would be first to credit the defendant with the amount realized from the securities held by the defendant and to pay the defendant dividends only on the amount of the debt exceeding that which was realized from the securities. There was an error in the calculations made in the interpleader proceedings wherein the defendant only realized $4,012.43. When as a matter of fact after all cost was paid the defendant should have received $5,375.66. The defendant received from the trustees $6,500 prior to the judgment and distribution made in the interpleader proceeding. It is to be seen that the defendant has received $6,500 and $4,012.43 making a total of $10,012.43. If the calculations had been correct the defendant would have received $5,375.66 from the interpleader proceeding. Deducting this amount from the $10,000 claim of the defendant it would leave a balance of $4,624.34, being the amount in excess of the securities. Instead of calculating the defendant's 50% dividend on the basis of $10,000 it should have been calculated on the balance of $4,624.34 making $2,312.17. The 15% dividend should have been calculated on the same balance and would have amounted to $693.63. In other words the defendant was entitled to $5,375.66, $2,312.17 and $693.63 or a total of $8,381.46

The defendant was over paid the difference between $10,512.43, and $8,381.466 or the amount of $2,130.97.

The defendant has been over paid the amount due them under the agreement. The defendant, as well as the other creditors, was a party to this agreement appointing the trustees to administer the assets of the Company and pay its debts. The assets of the Company were transferred by pledge and pawn and the title still remained in the Company. In the agreement the trustees were given full power of attorney to institute the necessary suits to collect monies due the Company and to defend suits that might be brought against it. A copy of this agreement and power of attorney was attached to the petition and especially referred to.

In support of its exception of want of proper parties plaintiff and defendant, counsel for the defendant cites Buck v. Larcade, 183 La. 570, 164 So. 593. In that suit there was no power of attorney authorizing Buck to institute the suit. The suit was instituted by Buck as trustee claiming the legal title in himself. In the instant suit the trustees do not claim the legal title to the assets but are acting as an agent, under a special power of attorney, for the principal. The trustees had the right to institute this suit under the power of attorney. Article 320 of the Code of Practice. The lower court properly overruled this exception.

The defendant's plea of res adjudicata is based on the judgment rendered in the interpleader proceedings in the United States District Court. That suit only determined the amount due the defendant from its securities. The $6,500 paid the defendant by the trustees was not at issue or determined in that suit. The error complained of involves only the $6,500 paid by the trustees. Under the plain terms of the agreement the defendant was entitled to realize from its securities and to participate in the funds held by the trustees only to the extent that its debt exceeded the value of the securities. It would be impossible for the trustees to determine to what extent the defendant would share in the funds held by them only until and after the value of the securities held by the defendant were ascertained. A careful reading of the testimony clearly shows that this was the intention of the trustees when the dividends were paid to the secured creditors. The trustees distributed this money in the manner they did because they were fearful of the unsettled conditions of the banks with the view of a final adjustment after the value of the securities were determined. Furthermore, the president of the defendant bank was one of the five trustees that erroneously paid the defendant more than it was entitled to. We see no merit in the defendant's plea.

The defendant's plea of estoppel is without merit. It is based on the ground that the trustees acquiesced in the judgment rendered in the United States District Court in the interpleader proceedings. The interpleader proceedings did not involve the payment of the defendant of amounts in excess of its securities. Only the value of the de-

fendant's securities was involved in that suit.

The exception of no cause or right of action is also based on the judgment in the interpleader proceedings and for the reasons above set forth we see no merit in this exception.

■ After a careful review of all the testimony in this case we are of the opinion that the judgment of the lower court is correct. The defendant was over paid through error and should be required to return the amount over paid. Revised Civil Code, arts. 2301 and 2302.

"He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it."

"He who has paid through mistake, believing himself a debtor, may reclaim what he has paid."

The lower court was correct in allowing the defendant credit for the discrepancy made in the calculation of the value of the securities. The lower court allowed the defendant credit for the full value of its securities and calculated the dividends on the debt of the defendant in excess of its securities which is correct and in accordance with the agreement of the defendant and other creditors with the Company.

For the reasons assigned, the judgment is affirmed at appellants' cost.