McBRIDE, Judge.
The decedent, who had his domicile in the City of New Orleans, died intestate on February 11, 1958, at the East Louisiana Hospital, Jackson, Louisiana, where he was temporarily confined. His succession was opened twice in the Civil District Court for the Parish of Orleans, firstly on November 10, 1966, by the asignee of an alleged heir who prayed for an administration, and secondly on November 17, 1966, by L. J. Scanlon, the Public Administrator for the Parish of Orleans, who also sought to provoke an administration. In the latter proceedings, without a contradictory hearing, letters of administration were issued to the public administrator under date of November 30, 1966. Both succession proceedings have been consolidated by order of the trial court.
^ Joseph H. King’s estate consists of $2414 cash, in the hands of Leonard M. Sklar of the County of Los Angeles, California, and under the jurisdiction of the Superior Court of the State of California for the County of Los Angeles. To a full understanding of the issues involved herein the origin of said funds should be set forth.
*337 Decedent was married but once and then to Emily Marquette who died intestate in New Orleans, the matrimonial domicile, on July 15, 1943; there was no issue of the marriage. At her death Emily Marquette King owned real property both in Louisiana and in California, the property in the latter state consisting of a lot of ground in Los Angeles County which Emily Marquette had acquired on August 11, 1924, while a femme sole and prior to her marriage to King.
Although Emily Marquette King died July 15,' 1943, Louisiana succession proceedings were not opened until August 27, 1965, when her sister and the descendants of deceased brothers and sisters and two assignees of some of the heirs, filed a petition in the Civil District Court for the Parish of Orleans (No. 439-349) praying for recognition and possession of the decedent’s property in Louisiana. Judgment was rendered accordingly on the same day.
Some time early in 1966, the Succession of Emily Marquette King was opened in the Superior Court of the State of California for the County of Los Angeles, in the proceedings entitled “In the Matter of the Estate of Emily Marquette King, aka Emily Marquette, Deceased,” No. P 501, 698, of said Court and Leon M. Sklar, above mentioned, was named administrator of the es-f tate. The lot of ground in California was i the only asset of Emily Marquette King in that state and notwithstanding it was her separate and paraphernal property, under California law, upon her death a one-half interest therein devolved upon her surviving husband, Joseph H. King, and the other one-half interest went to said decedent’s mother, Emma S. S. Marquette, pursuant to § 223 of the California Probate Code, which provides as follows:
“If the decedent leaves a surviving spouse and no issue, the estate goes one-half to the surviving spouse and one-half to the decedent’s parents in equal shares, or if either is dead to the survivor, or if both are dead to their issue and the issue of either of them, by right of representation. (Stats. 1931, c. 281, p. 596, § 223.)”
Under California law when Joseph H. King died in 1958, without having left ascendants or descendants, his one-half interest in the California property inherited from predeceased Emily Marquette King reverted or passed to the brothers and sisters of Emily Marquette King or to their descendants by right of representation. At the time of King’s death Emma S. S. Marquette, the mother of Emily Marquette King, was deceased, her death having occurred December 7, 1945. Section 229 of the California Probate Code provides, as follows:
“If the decedent leaves neither spouse nor issue, and the estate or any portion thereof was separate property of a previously deceased spouse, and came to the decedent from such spouse by gift, descent, devise or bequest, or became vested in the decedent on the death of such spouse by right of survivorship in a homestead or in a joint tenancy between such spouse and the decedent, such property goes in equal shares to the children of the deceased spouse and to their descendants by right of representation, and if none, then to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of the deceased spouse and to their descendants by right of representation. (Stats. 1931, c. 281, p. 597; § 229, as amended Stats. 1939, c. 1065, p. 2992 § 2.)”
Thus, when the succession of Emily Marquette King was opened in California in 1966, her estate owned one-half of the lot in the County of Los Angeles and the Succession of Joseph H. King owned the other one-half interest, descent and distribution to be controlled by the law of California.
It is a well settled rule relating to conflicts of law that in succession matters *338 immovable property is distributed in accordance with the law of the state where the property is situated under the jurisdiction of the courts of said state. Succession of Simms, 250 La. 177, 195 So.2d 114 (Aff. Sup.Ct.); Succession of Fisher, 235 La. 263, 103 So.2d 276; Succession of Herber, 128 La. 111, 54 So. 579; Succession of De Roffignac, 21 La.Ann. 364; Hoggatt v. Gibbs, 15 La.Ann. 700; Atkinson v. Rogers, 14 La.Ann. 633; Succession of Martin, La. App., 147 So.2d 53.
In due course, Sklar, the administrator of the estate of Emily Marquette King, sold the lot in Los Angeles County in order to pay debts, charges, and expenses of the administration, and after such disbursements the net balance remaining, according to Sklar’s final account, “shall go one-half to the estate and succession of Joseph H. King and one-half to the estate and succession of Emma Sophie Simon Marquette” (Mother of Emily Marquette King).
Sklar has in his possession for the account of “Estate and Succession of Joseph H. King, Deceased,” the sum of $2414.
The Public Administrator of the Parish of Orleans in the proceedings “Succession of Joseph H. King,” opened by him in the Civil District Court under No. 456-456 of its docket, claims the right to administer said funds, which it is conceded by all parties hereto, constitutes the sole asset of Succession of Joseph H. King. The public administrator proceeds under R.S. 9:1583 which provides that public administrators shall be appointed administrators of intestate successions in their respective parishes when there is no surviving husband or wife or heir present or represented in the state.
It is true that when Joseph H. King died he left no wife or any blood relatives whatever and the public administrator is insisting that this brings the succession within the purview of R.S. 9:1583 and endows him with authority to open the succession and administer the estate. Counsel boldly argues that whereas Joseph H. King left no lawful relatives, or a surviving wife, or acknowledged natural children, his succession belongs to the State of Louisiana, citing R.C.C. art. 929. Counsel seems to confuse the word “heir” with the word “relative”. His argument is that, in default of relatives, the estate must be considered vacant, subject to public administration. We do not agree with this. Although Joseph H. King left no surviving wife or blood relatives, he did leave heirs because the distribution of the property in California is strictly to be governed by the law of that state and the property devolved upon persons who are not relatives, but nonetheless are lawful heirs. R.C.C. art. 884 defines “heir” thusly:
“The person who has become the universal successor of the deceased, who is possessed of all his property and rights, and who is subject to the charges for which the estate is responsible, is called the heir, no matter whether he be such by law, by the institution of a testament or otherwise.”
When Joseph H. King closed his eyes in death whatever interest he had in the California property at once passed to the brothers and sisters of Emily Marquette King or to their descendants by right of representation. It is said in 23 Am.Jur.2d, p. 770:
“Real property, on the death of an ancestor, vests immediately in the heirs, whether they are known or unknown. The heirs, as a general rule, take legal title, with the right to possession and control ^ ^
Cited as an authority under the above text is Johns v. Scobie, 12 Cal.2d 618, 86 P.2d 820, 121 A.L.R. 1404, wherein the California Supreme Court (In Banc) said:
“The decedent died intestate, and upon his death title to the property became vested in his heirs (Probate Code, § 300) whether such heirs were known or unknown. State v. Miller, 149 Cal. 208, 85 P. 609.”
*339 Although the heirs of Joseph H. King, under the Probate Code of California, had not reduced their ownership to possession when Sklar, the administrator, judicially sold the property in the Succession of Emily Marquette King in California he, in effect, converted the share of King’s heirs in the property to the sale price for their account and their ownership became vested therein in lieu of the property. It would be incongruous to say that the property owners have no interest in the proceeds of the sale and that because King left no wife or blood relatives the State of Louisiana under local law would take the avails of the sale to the exclusion of the owners of the property. The Louisiana law pertaining to descent and distribution is not controlling.
A copy of Sklar’s final account is part of the record and the document discloses that he is holding the above mentioned cash amount for the account of:
“Estate and- Succession of Joseph H. King, Deceased husband of Decedent
c/o L. J. Scanlon
Public Administrator of Parish of Orleans
5000 Pauger Street
New Orleans, Louisiana”
How and why the administrator in California carried the address of “Estate and Succession of John H. King, Deceased, husband of Decedent,” as above indicated, we do not know as no explanation from anyone appears in the record. The public administrator claims that the first knowledge of the cash amount in the hands of Sklar came to him when he received in the mails an envelope containing a copy of the “First and Final Account, Report and Petition for Distribution and for Fees (By Administrator) No. P-501-698 of the Superior Court of the State of California, for the County of Los Angeles.” The envelope was postmarked at Los Angeles on November 3, 1966. Counsel tells us that it then became obvious to the public administrator, “ * * * since he was going to be paid as the legal representative of the Succession of Joseph H. King by the Estate of Emily Marquette King in California that he should apply and be granted Letters of Administration in the matter.”
The fact that the California administrator carried the address of Succession of Joseph H. King c/o of the Public Administrator of the Parish of Orleans would not of itself endow the public administrator with authority to administer the funds as belonging to a vacant estate, Sklar had no authority to delegate the Public Administrator of the Parish of Orleans to receive or administer any funds belonging to the Succession of Joseph H. King. If the public administrator has the power to administer, such would flow from the law of the State of Louisiana as contained in R.S. 9:1583, which is not applicable in this case as there are heirs of Joseph H. King before the same court in which the public administrator.provoked his proceedings for appointment.
It is argued on behalf of the public administrator that he is the proper person to administer a vacant succession until the heirs present themselves and show by proper proof that they are entitled to inherit. The opening of the Succession of Joseph H. King, No. 456-193 of the docket of the Civil District Court on November 10, 1966, primed the application for administration made by the public administrator by a matter of seven days. When the public administrator filed his proceedings he should have been cognizant that the Succession of Joseph H. King had already been opened in the same court and the assignee of the heirs was seeking an administration. Under the circumstances, our opinion is that the application of the public administrator should be considered merely as an intervention in opposition to the first application. C.C.P. art. 3098 contemplates a hearing where two or more persons are applying for letters of administration.
On December 7, 1966, three heirs, all nephews of Emily Marquette King, and two *340 assignees of these or other heirs, filed a rule in the consolidated succession proceedings below seeking to have the appointment of the public administrator recalled, revoked and annulled on several grounds, one of which is that the succession is not vacant and the administration thereof is being claimed by heirs of Joseph H. King who are present before the court. After a trial the 'rule was dismissed by the lower court and the movants in said rule have taken this appeal which we áre now considering.
The public administrator is contending that even if the descendants of Emily Marquette King are the proper persons entitled to the cash proceeds of the sale then and in that event those persons before the court have not proven their heirship or their right to inherit.
The copy of Sklar’s final account introduced by the public administrator as evidence on the trial of the rule shows the names of certain persons as heirs of Emily Marquette King, and this, taken into consideration and in conjunction with the records “Succession of Emily Marquette, wife of Joseph H. King, Lawrence Marquette and Mary Jane Marquette, wife of Eldon J. Básele,” No. 439-349 of the Civil District Court for the Parish of Orleans and “Succession of Mrs. Lena M. Fernandez,” No. 449-551 of the said court and the judgments therein, establishes the heir-ship of movers in rule.
 In this case the court holds that the cash proceeds held by the California administrator for the account of Succession of Joseph H. King belongs to the brothers and sisters of Emily Marquette King or their descendants and must be distributed in accordance with California law, that the movers in rule have made at least a prima facie showing of their heirship, and that the Succession of Joseph H. King is not a vacant one and the public administrator has no right to the administration thereof. In Succession of Meier, La.App., 172 So.2d 714, we held that the public administrator, once appointed, may be removed for reasons other than the commission of an illegal act. See C.C.P. arts. 3093-3098. We stated in said case:
“Succession of Smith, 40 La.Ann. 105, 3 So. 539, holds that a Public Administrator cannot be appointed where the heirs of the decedent are present or represented. In the case at bar the alleged sole heir of decedent, represented by counsel, filed the affidavit of death and heirship and evidence that Morel was the sole nominee. Therefore, under LSA— C.C.P. Art. 3098(2) the court could appoint no other than Morel.”
“Since the initial proceeding was instituted on behalf of the alleged sole heir, the petition of the Public Administrator at best was an intervention, notice of which had to be served on the original petitioner for appointment under LSA-C.C.P. Arts. 1093, 1313, 1314.
“Clearly, the Public Administrator was appointed prematurely and improvidently in view of the previous and impending application of the alleged heir and her nominee, who were entitled to a hearing. See State ex rel. Leonard v. Parish Judge of the Parish of Plaquemines, supra, [25 La.Ann. 329].”
In Succession of Gee, 26 La.Ann. 666, it was held that heirs were present and represented and the public administrator had no right to take the estate under administration, and his appointment was therefore irregular and illegal.
For the reasons above assigned, the judgment dismissing the rule is reversed and it is now ordered, adjudged and decreed that the rule be made absolute and that there be judgment in favor of movers and against the public administrator recalling and revoking his letters of administration, he be divested of any and all right to claim or proceed with the administration of the Succession of Joseph H. King; the matters are remanded to the lower court to be proceeded with in accordance with law.
Reversed, rendered and remanded.
i