179 So. 298

**FORD et al. v. WILLIAMS et al.**

No. 34514.

Feb. 7, 1938.

Foster, Hall, Barret & Smith, of Shreveport, and Fred L. Jackson, of Homer, for appellants.

Wilkinson, Lewis & Wilkinson and W. M. Phillips, all of Shreveport, for appellees.

ODOM, Justice.

Plaintiffs appealed from a judgment sustaining an exception of no cause of action filed by the defendants.

The facts disclosed by the petition are that Julia Ford and her son, Ragan, own the S. E. ¼ of the N. W. ¼ and the S. W. ¼ of the N. E. ¼ of Sec. 28, Tp. 21 N., R. 5 W., in Claiborne parish, and that on August 26, 1924, they sold to R. W. Williams an undivided one-fourth interest in the minerals in and under said land. Two days later, on August 28, Williams by two separate deeds sold to A. D. Mading a $^{10}\!/_{64}$ interest in the minerals which he had acquired. Mading in turn sold to others $\%_{4}$ of the interest which he had acquired, leaving himself the owner of $\frac{1}{64}$ interest. At the time Mading acquired the interest in the minerals he was married. His wife, Mrs. Imogen Wemple Mading, died intestate on March 5, 1927, leaving as her sole heir one child, about five months old, named Imogen. Mrs. Mading's succession was opened, and by judgment her minor child was sent into possession of all the property of which she died possessed, specifically including her community interest in these minerals, "subject, how-

ever, to the usufruct provided for by law in favor of Aubyn D. Mading, father of said minor."

On August 26, 1927, the interest of the minor in the oil, gas, and other minerals in this property was adjudicated to her father, Aubyn D. Mading, by judgment rendered in the civil district court of Caddo parish. Aubyn D. Mading died intestate at his residence and domicile in Caddo parish on September 26, 1934, and left as his sole heir the one child born of his marriage to Mrs. Imogen Wemple Mading.

On May 14, 1937, Mrs. Ford and her son, the landowners, filed this suit to cancel the mineral servitude which they granted to R. W. Williams on August 26, 1924. They alleged that said servitude had never been exercised by the original grantee or by any of his transferrees, and that, more than ten years having elapsed since the servitude was granted by them, it is extinguished by nonusage under article 789 of the Civil Code.

R. W. Williams and those who own an interest in the servitude granted to him, including the minor Imogen Mading through her tutor, excepted to plaintiffs' petition on the ground that it set out no cause of action. This exception was sustained by the trial judge, and plaintiffs' suit was dismissed.

Defendants' exception of no cause of action is grounded upon the proposition that plaintiffs' petition affirmatively shows that the minor Imogen Mading owns an interest in the servitude, that the servitude is indivisible, and, being owned in

indivision by the minor and majors, the suspension of prescription as to the minor suspended it also as to the majors. Sample v. Whitaker, 172 La. 722, 135 So. 38, 39.

The petition shows, as counsel for defendants say, that there was never a continuous period of as much as ten years during which the minor Imogen Mading did not own an interest in the servitude. The servitude was granted to R. W. Williams on August 26, 1924. The right granted by the landowners to explore the land for the production of minerals was never exercised, and therefore the servitude expired because of nonusage on August 26, 1934, the end of the ten-year period, under article 789 of the Civil Code, unless the running of prescription was interrupted in some way recognized by law.

The petition shows that when A. D. Mading purchased an interest in the mineral rights from Williams on August 28, 1924, he was married, and that such right as he acquired fell into the community which existed between him and his wife. When his wife died on March 5, 1927, her minor child, Imogen, inherited her mother's community interest. The minor's interest in the minerals was adjudicated to her father on August 26, 1927, and was owned by him until his death on September 26, 1934, and at his death the minor inherited all his property. The minor therefore owned an interest in the servitude from the date of her mother's death until that interest was adjudicated to her father, a period of five months and one day. The minor owned no interest in the minerals from the time that interest was

adjudicated to her father until the father's death; and thereafter until the present time she owned the interest which she inherited from her father.

It is conceded by counsel for plaintiffs that if, as a matter of law, the minor acquired by inheritance from her mother, and later by inheritance from her father, any interest in the servitude, the servitude is not prescribed; the running of prescription having been suspended during the period of the minor child's ownership, under the ruling in Sample v. Whitaker, supra.

But counsel for plaintiffs argue that a so-called mineral servitude is a "personal servitude," as that term is used in the articles of the Civil Code relating to servitudes generally, and that the rights under such a servitude are not heritable unless the act creating it so provides; that the rights acquired by Mading and his wife in this servitude expired with them.

In support of their theory they cite article 758 of the Civil Code, which reads as follows: "When the right granted is merely personal to the individual, it expires with him, unless the contrary has been expressly stipulated."

They point out that the servitude granted by the landowners, which was an outright sale of "one-fourth (¼) of the oil, gas and other minerals, in and under and that may be produced from the following described lands," was granted "unto R. W. Williams resident of Shreveport, La., and *assigns*." They stress the fact that it was not "expressly stipulated" in the grant that the right acquired by the grantee of the servitude should be inherited by his heirs, and for that reason argue that, under article 758 of the Civil Code, such rights as the grantee acquired would have "expired with him" had he died, and for the same reason such rights as Mading and his wife acquired expired with them.

We find no merit whatever in counsel's argument. A so-called mineral servitude which results either from a sale of land with a reservation of the minerals therein or from an outright sale by the landowner of the minerals within and under his lands is not a "personal servitude" within strict legal meaning. It is true that in some of the opinions it is referred to as a personal servitude. But in some of the same opinions and in many others it has been referred to as a real right or interest in the land "in the nature of a servitude" or "a servitude in the nature of a limited usufruct on the land." Sample v. Whitaker, supra; Gayoso Company, Inc., v. Arkansas Natural Gas Corporation et al., 176 La. 333, 145 So. 677; Frost-Johnson Lumber Company v. Nabors Oil Company, 149 La. 100, 88 So. 723; Palmer Corporation et al. v. Moore, 171 La. 774, 132 So. 229, and numerous authorities there cited; Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207; Gulf Refining Company v. Glassell, 186 La. 190, 171 So. 846.

Servitudes which affect lands are divided into two kinds, personal and real.

"Personal servitudes are those attached to the person for whose benefit they are

established, and terminate with his life. This kind of servitude is of three sorts: usufruct, use and habitation." Civ.Code, art. 646.

Articles 756 and 757 refer, respectively, to real and personal servitudes. Article 756 says that:

"If the right granted be of a nature to assure a real advantage to an estate, it is to be presumed that such right is a real servitude, although it may not be so styled."

The first paragraph of article 757 says:

"If, on the other hand, *the concession from its nature is a matter of mere personal convenience,* it is considered personal, and can not be made real but by express declaration of the parties." (Italics are the writer's.)

The second paragraph of the latter article illustrates:

"Thus for example, if the owner of a house near a garden or park, should stipulate for the right of walking and gathering fruits and flowers therein, this right would be considered personal to the individual, and not a servitude in favor of the house or its owner."

■ It is perfectly evident that article 758 of the Civil Code, which provides that "When the right granted is merely personal to the individual, it expires with him, unless the contrary has been expressly stipulated," relates to such purely personal rights as usufruct, use, and habitation mentioned in article 646, and to such concessions as from their nature are matters of "mere personal convenience" mentioned in article 757.

■ It is a matter of common knowledge—and this court has so held—that rights acquired under so-called mineral servitudes are property rights. In the case of De Moss v. Sample, 143 La. 243, at page 249, 78 So. 482, 484, this court referred to the rights under such mineral servitudes as "the most valuable property in the state." The paragraph of that opinion in which that reference was made was quoted with approval in Frost-Johnson Lumber Company v. Salling's Heirs, supra. See opinion, on second rehearing, 150 La. 857, 91 So. 242.

In the case of Sample v. Whitaker, supra, this court said:

"As S. G. Sample acquired the real estate, on which he made the mineral reservation, during the existence of the community, *the mineral rights reserved constituted an asset of the community, and, upon the death of Mrs. Sample, her undivided half interest in those rights descended to her children.*" (Italics are the writer's.)

As in the Sample v. Whitaker Case, the mineral rights reserved by Sample became an asset of the community and upon the death of Mrs. Sample "her undivided half interest in those rights descended to her children," so, in the case at bar, the mineral rights acquired by A. D. Mading became an asset of the community which existed between him and his wife, and at her death her one-half interest therein descended to her minor child, and likewise at the death of Mr. Mading this asset descended to his child, his sole heir.

It is not necessary to stipulate in an act by which property rights are acquired that such rights are to inure to the benefit of the purchaser's heirs. A right acquired under a mineral servitude is property, and all property which a person leaves at his death is transmitted by mere operation of law to his nearest heir, if there is no testament or institution of heir. Civ.Code, art. 886.

"Succession is the transmission of the rights and obligations of the deceased to the heirs." Civ.Code, art. 871.

The second contention made by counsel for plaintiffs is that, if it be held that the right acquired by Mading in this servitude was heritable, then during the period from March 5, 1927, when the child inherited from her mother, to August 26, 1927, when the child's interest was adjudicated to her father, the interest in the servitude now claimed by the child was held by her father in the capacity of owner of one-half of it and as usufructuary of the other half, and therefore the father could have explored the property for minerals as though the entire interest had been owned by him.

In support of this argument, they cite article 544 of the Civil Code, which provides that "all kinds of fruits, natural, cultivated or civil, produced, during the existence of the usufruct, by the things subject to it, belong to the usufructuary"; and article 554, which provides that "the usufructuary enjoys the rights of servitudes, ways or others due to the inheritance of which he has the usufruct."

It is contended that, because a usufructuary has such rights under the law, the running of prescription was not suspended during that period of the child's ownership.

The answer to this argument is the law itself, which is that prescription does not run against minors. During the period mentioned, the minor owned an interest in the servitude. Conceding without holding that the father as usufructuary could have exercised the rights which counsel say he could, it does not follow that his failure to do so deprived his minor child of the benefit which the law gives her.

In a supplemental brief filed by counsel for plaintiffs, they urge the additional point that, if it be held that the rights acquired by Mading were heritable and that prescription was suspended as to the minor during the time her interest was vested in her father as usufructuary, then the running of prescription liberandi causa was not suspended as to the rights of any of those who held under Williams except the minor, and that therefore the exception of no cause of action should be overruled in so far as the majors are concerned.

This contention is not consistent with the theories advanced in their original brief and is wholly inconsistent with the petition itself. The petition shows that plaintiffs had granted four separate and distinct mineral servitudes on their property. The suit was brought specifically to cancel each one of these servi-

tudes, which are mentioned separately. Referring to the servitude granted to R. W. Williams, plaintiffs alleged in paragraph 2 of their petition that: "The ownership of said servitude is now claimed by the following parties in the proportion set opposite their names." Then follow the names of those who claim to own this particular servitude, and the pro rata share owned by each. The petition treats this as an indivisible servitude owned jointly and in indivision by the minor and certain majors. Plaintiffs did not sue to cancel the servitude in so far as the individual owners of it were concerned, but to cancel the servitude as a whole. They are entitled to only such relief as they claimed in their suit.

For the reasons assigned, the judgment appealed from is affirmed at the costs of appellants.

O'NIELL, C. J., absent.