187 So. 66

**STATE ex rel. BOURGAUX et al. v. FONTENOT, Clerk of Court, et al.**

No. 35003.

Feb. 6, 1939.

Rehearing Denied March 6, 1939.

Bruner & Chambers, of Crowley, and Liskow & Lewis, of Lake Charles, for appellants.

Robira & Gerard, McCoy, King & Jones, and Cline, Thompson, Lawes & Cavanaugh, all of Lake Charles, for appellees.

FOURNET, Justice.

This is a proceeding by mandamus instituted by the owners of a certain two-acre tract of land located in what is known as the Jennings Oil Field in Acadia Parish, Louisiana, to compel the Clerk of Court for that parish to cancel and erase from the conveyance records of his office the mineral reservation contained in a deed dated August 24, 1907, from William L. McFarlain to Emile J. Bourgaux, one of the relators herein and author in title of the other relators, and also certain mesne conveyances made of said reservation by the heirs of William L. McFarlain or their assignees, on the ground that the mineral reservation being in the nature of a servitude expired August 24, 1917 for nonuse, and, as an alternative plea, they claim the right to extinguish the said obligation resting on their land under a clause contained in the deed upon the payment of $550, which was deposited in the registry of the court.

Respondents, who claim title to the mineral reservation in the deed above referred to either as heirs of or derive their title through some of the heirs of William L. McFarlain, in defense of the main demand pleaded that the prescription for the nonusage of the so-called servitude or mineral right then accruing was interrupted by reason of the minority and interdiction of some of the co-owners from the moment of the death on October 29, 1915 of their ancestor in title, William L. McFarlain, which minority or interdiction existed continuously to the time of the institution of this suit. As to the alternative demand

they filed (1) exceptions of no cause and no right of action and (2) the plea of prescription of ten years.

The case was submitted as an ordinary suit by agreement of all parties on an agreed statement of facts. There was judgment in the lower court rejecting relators' demands and ordering the return of the $550 deposited. Relators have appealed.

On August 24, 1907, Emile J. Bourgaux acquired the east two acres of lot No. 4 of the S.W. ¼ Sec. 41, Tp. 9 S., R. 2 W., by deed from William L. McFarlain for a cash consideration of $50, in which is contained the following stipulations:

"It is specially agreed that the vendor only sells the surface of the land herein conveyed, reserving the mineral rights thereof, with privilege of ingress and egress for the purpose of boring for oil and minerals thereunder. * * *

" * * * and it is further agreed that the purchaser has the privilege of buying the mineral rights under the land herein upon paying to this vendor the sum of Five Hundred and Fifty Dollars."

The agreed statement of facts shows that this land was purchased during the existence of the community between William L. McFarlain and his wife, Louisa Gatte; that William L. McFarlain died intestate on October 29, 1915, leaving surviving him his widow, who died in 1919, and a number of children and grandchildren, two of the grandchildren having been born in the years 1909 and 1911 respectively; that on March 22, 1920, prior to the time the two minors reached the age of majority, one

of his (McFarlain's) children was judicially interdicted and on January 26, 1937 he died, without the judgment of interdiction having been removed; and that there was no operation on the land under the mineral reservation from the time the land was purchased in 1907 until the time this suit was filed.

Counsel for relators concede that under the doctrine announced by this court in the case of Sample v. Whitaker, 172 La. 722, 135 So. 38, and in our more recent decision in the case of Ford v. Williams, 189 La. 229, 179 So. 298, that the prescription for the extinguishment of the mineral servitude affecting their property was interrupted by the minority and interdiction of some of the co-owners thereof, and that their main demand must fall if we adhere to our decision in those two cases.

The theory upon which relators rely to maintain their demand, which was decided in the Ford case adversely to their interest, is that upon the death of William L. McFarlain in 1915 the surviving widow became vested in her own right as owner of one half of the servitude and as usufruct of the other half and she was, therefore, entitled to the use and enjoyment of the entire servitude and consequently the prescription for the extinguishment of the servitude for nonuse continued to run and accrued on August 24, 1917.

Their argument in support thereof is expressed in the following excerpt from their brief:

"The minors who have only a naked ownership and who could not have exercised the right even had they been of age during the existence of the usufruct, can not say that prescription did not run against them because of minority, as it did not run against them at all. The prescription accrued against the possessor of the right, the widow in community and usufructuary.

"If she allowed the prescription to run, then according to Article 590 of the Civil Code, the minors and other naked owners had their remedy against her. When this Article says that the usufructuary who loses a servitude 'by nonusage on his part', that statement is plainly to the effect that prescription is running and accrues against the usufructuary, not the naked owner, but in favor of the owner of the land."

The provisions of Article 590 of the Revised Civil Code that "The usufructuary who loses, by nonusage on his part, a servitude belonging to the property subject to his usufruct, is responsible for it to the owner * * *," does not change the law that "Prescription does not run against minors and persons under interdiction * * * ." Article 3554, Revised Civil Code. See, also, Article 3522 of the Revised Civil Code. We therefore conclude that their contention in support of the main demand is without merit.

We now pass to relators' alternative demand, that is, that in accordance with the stipulations in the deed above referred to they have the right to extinguish the mineral servitude by the payment of $550, which was deposited in the registry of the court.

The trial judge, in his written reasons for judgment, stated that he was " * * * not disposed to grant the relief sought thereby because unquestionably an unreasonable length of time has been permitted to elapse without the relators availing themselves of any rights which might have been granted them by what might be conveniently termed 'the option to repurchase the mineral servitude.' "

On this point counsel for relators argue here that the vendor, by inserting the two above quoted stipulations in the deed of August 24, 1907, created, by the first, a mineral servitude subject to a resolutory condition contained in the second, which dissolving condition was coexistent with the servitude and gave them the "right to rid" their land of the first incumbrance by paying the sum of $550.

Article 783 of the Revised Civil Code enumerates seven methods by which servitudes are extinguished, one of them being "By the expiration of the time for which the servitude was granted, *or by the happening of the dissolving condition attached to the servitude.*"

In disposing of this issue we must first take into consideration what was the intention of the parties. See the articles in Section 5 of Chapter 3 of Title 4 of Book 3 of the Revised Civil Code, arts. 1945 –1962, under the heading "Of the Interpretation of Agreements".

By a mere reading of the deed in controversy we readily reach the conclusion that the vendor, in disposing of .the property of which he had the perfect own-

ership, sold the surface thereof for the sum of $50 and reserved for himself the most valuable part, the mineral rights. This he never disposed of, but in the same deed did agree to sell to his vendee for the cash consideration of $550. It is obvious that the vendor never intended that the most valuable part of his ownership, which he retained, should be held in suspense until such time as it passed to his vendee by prescription or if, prior thereto, it became more valuable by development, that it could be acquired by his vendee upon payment of the sum stipulated in the contract. Moreover, if the stipulation were a resolutory condition, as contended by relators, it is subject to the prescription liberandi causa of ten years. Vincent v. Bullock, La. Sup., 187 So. 35; R. E. E. De Montluzin Co. v. New Orleans & N. E. Ry., 166 La. 822, 118 So. 33, 35. In the latter case, this court, speaking of the ten year prescription of the resolutory condition, said:

" * * * This prescription begins to run the moment the cause of action to enforce the condition arises. In the contract before us no time is fixed within which defendant was to build the station. Such being the case defendant had a reasonable time, under the circumstances of·the case, in which to comply with its obligation, say one, or even two years. No reason appears why it could not have consistently complied with the obligation it had assumed. Since over 40 years elapsed between that time and the bringing of this suit, without the making of an effort to enforce the resolutory condition, contained in the act by which the property was transferred

to defendant, it is clear that the action to enforce the resolutory condition is barred by the prescription of 10 years."

For the reasons assigned, the judgment of the lower court is affirmed; appellants to pay all costs.