198 So. 902

OHIO OIL CO. v. COX et al.
No. 35782.

Nov. 4, 1940.

Byron A. Irwin, of Shreveport, for Harry E. Oliver and W. J. Hobby, Jr.

Campbell & Campbell, of Minden, for Warren Cox, defendant and appellant.

Lee & Lee, of Shreveport, for R. O. Roy and John P. Wemple, tutor for the minor Imogen Mading, defendants.

Cook, Cook & Egan, of Shreveport, for W. H. Hodges, Jr., Virginia Hamilton Frame, Betsy Frame, Bryan Ardis Frame, C. B. Hodges, Jr., Miss Sallie Lynn Iler, Mrs. Essie Iler, W. C. Marshall, W. W. Newcomb and Mrs. Maymie Whitaker Hibbler, defendants, appellees.

Herold, Cousin & Herold, of Shreveport, for Edward L. Wagon, individually and as tutor of the minor Edward C. Wagon; Mary Margaret O'Brien and Caroline Ann O'Brien, minors, appearing through J. C. O'Brien, administrator, defendants and appellees.

LAND, Justice.

Warren Cox is the owner of 60 acres of land in Webster Parish, described as the S.E. 1/4 of S.E. 1/4 and E. 1/2 of S.W. 1/4 of S.E. 1/4 of Section 23, Township 21 North, Range 10 West. September 11, 1922, Warren Cox, the landowner, executed a mineral lease on the whole of this property to J. Y. Snyder for a term of three years, or until September 11, 1925. Tr. p. 62. February 19, 1924, this lease was transferred by J. Y. Snyder to The Ohio Oil Company. Tr. p. 67. In October of 1925, Cox, and others then owning the minerals under sales out of Cox, executed an extension of the oil and gas lease in favor of The Ohio Oil Company for a period of five years, from September 11, 1925, to September 11, 1930, and The Ohio Oil Company obligated itself immediately to

begin the drilling of a well to the depth of 4300 feet. Tr. pp. 67 to 71.

The well was begun on November 21, 1925, and was drilled to a depth of 5,957 feet, when it was abandoned as a dry hole *on September 16, 1926.* Tr. p. 248. A release was executed by The Ohio Oil Company on August 13, 1929. Tr. p. 249.

The Ohio Oil Company acquired, from 1934 to 1936, oil, gas and mineral leases from all of the claimants to the mineral rights and from Warren Cox, the landowner (Tr. pp. 80 to 122 inclusive), and thereafter secured a pooling agreement from all of said mineral claimants and Warren Cox, the landowner (Tr. pp. 123 to 141 inclusive), but in this pooling agreement it was expressly stipulated that the rights of all parties thereto were reserved to contest the rights of any adverse claimants to the minerals. Tr. p. 126. Under these leases and pooling agreement, The Ohio Oil Company commenced drilling operations for a well which was completed as a gas distillate well on November 6, 1937 (Tr. p. 250), and thereafter, on January 28, 1938, completed another gas distillate well thereon. These two wells have been producing oil commercially ever since. Tr. p. 251.

Thinking that the rights between the mineral claimants on the one hand and Warren Cox, the landowner, on the other, were adverse, The Ohio Oil Company provoked this concursus, depositing in the registry of the court some $5,599 for distribution among the claimants. In response to this concursus the several mineral claimants advanced their contentions to their respective minerals (Tr. pp. 9 to 49) and

Warren Cox, the landowner, advanced his (Tr. pp. 50 to 60), claiming that the several servitudes, under which the mineral claimants held, had prescribed because of non-use for more than ten years. Tr. p. 60, paragraph 33.

Pursuant to these issues, the case was tried. All of the facts were stipulated (Tr. pp. 248 to 249) excepting such as were supported by documentary evidence and, as to these, the documents themselves were introduced.

The case was submitted to the trial court on briefs and the trial judge prepared an opinion, in which he concluded that the prescription urged by Warren Cox, the landowner, had been suspended by minority of some of the co-owners in each of the servitudes created by the landowner; that, consequently, there should be judgment for the mineral claimants. Tr. pp. 233–242. Judgment was, in accordance with this opinion, entered (Tr. pp. 243–245), and this appeal was brought here by Warren Cox, the landowner.

■ While it is true that Warren Cox created the servitude to Glen E. McFadin on September 21, 1922 (Tr. p. 142), it is also true that the property was then under lease to one J. Y. Snyder and the minerals sold to McFadin were sold subject to said lease; that, subsequently, Snyder assigned same to The Ohio Oil Company, and that company commenced drilling operations under its said lease on November 21, 1925, and drilled a well to a depth of 5,957 feet, at which depth it was abandoned on *September 16, 1926,* as a dry hole; that the said depth was such that the well was consid-

ered at that time a deep test, and was drilled below the then presently producing horizons, and was drilled in good faith by The Ohio Oil Company with reasonable expectation that said well would be a producer. Tr. pp. 248, 249.

This operation interrupted the running of prescription then accruing against the claims of the mineral claimants. Lee v. Giauque, 154 La. 491, 97 So. 669; Keebler v. Seubert, 167 La. 901, 120 So. 591; Palmer Corporation v. Moore, 171 La. 774, 132 So. 229; Arent v. Hunter, 171 La. 1059, 133 So. 157; Louisiana Petroleum Co. v. Broussard, 172 La. 613, 135 So. 1; Superior Oil Producing Company v. Leckelt, 189 La. 972, 181 So. 462; Lynn v. Harrington, 193 La. 877, 192 So. 517.

In their answers filed to the interpleader suit brought by The Ohio Oil Company, defendant R. O. Roy claims one-sixth (1/6) interest in the minerals in the land, and defendant John P. Wemple, tutor for the minor, Imogen Mading, claims one forty-eighth (1/48) mineral interest therein (Tr. p. 19); and both defendants assert that the respective mineral interest so claimed is a part of the mineral servitude created by the landowner, Warren Cox, on September 21, 1922, in favor of Glen E. McFadin when, under said date, Warren Cox sold to McFadin an undivided one-half (½) interest in the minerals in and under the sixty acres, Tr. p. 142.

The defense relied on by Roy and by the tutor of the minor is that when Warren Cox, the landowner, sold to Glen E. McFadin a one-half interest in the minerals in the land, on September 21, 1922,

he created a mineral servitude, indivisible in its nature, and covered the sixty acres of land as a whole. That said mineral servitude by mesne conveyances passed out of the said Glen E. McFadin and is now owned by the following parties in the following proportions:

| | | |
|---|---|---|
| R. O. Roy | 1/6 | M. I. |
| John P. Wemple, Tutor for Imogen Mading | 1/48 | M. I. |
| W. J. Hobby Jr., a minor | 21/256 | M. I. |
| Harry E. Oliver | 27/256 | M. I. |
| J. C. O'Brien, administrator of the estate of Margaret Mary O'Brien and Caroline Ann O'Brien | 1/12 | M. I. |
| Edward L. Wagon, tutor for Edward C. Wagon | 1/48 | M. I. |
| Edward L. Wagon, individually | 1/48 | M. I. |
| Total | 128/256 | M. I. |

representing the whole of the original servitude covering one-half of the minerals.

R. O. Roy acquired his one-sixth (1/6) interest out of the original servitude from Glen E. McFadin direct, under date of November 16, 1923. Tr. p. 148.

The minor, Imogen Mading, acquired her interest in the servitude in the following manner: Glen E. McFadin sold to J. P. Evans and H. E. Oliver, one-third (1/3) of the minerals in the sixty acres on December 4, 1922 (Tr. p. 143), and J. P. Evans and H. E. Oliver on November 14, 1923, sold a 1/48 mineral interest in the land to A. D. Mading (Tr. p. 146).

A. D. Mading was then married to Imogen Wemple and the interest so acquired fell into the community existing between them. Tr. p. 254. On February 23, 1927, the minor, Imogen Mading, was born and on the 5th day of March, 1927, her mother died, intestate, leaving the minor as her sole heir. Tr. p. 254. The minor inherited a 1/96 interest in the minerals, therefore, as sole heir of her deceased mother. On October 26, 1927, pursuant to judgment of the District Court of Caddo Parish, the interest of the minor was adjudicated to her father, A. D. Mading. Tr. p. 159. This placed in him the ownership of the entire interest in the minerals acquired by him from Evans and Oliver.

On September 26, 1934, A. D. Mading died intestate, leaving the minor, Imogen Mading, as his sole heir, and she by inheritance became vested with the one-forty-eighth (1/48) interest acquired as aforesaid. Tr. pp. 162 and 165.

The minor, Edward C. Wagon, acquired his 1/48 mineral interest in the original servitude, out of Glen E. McFadin by the following chain:

Sale, Glen E. McFadin to J. P. Evans and H. E. Oliver, 1/3 minerals, December 4, 1922. Tr. p. 143. Sale, J. P. Evans and H. E. Oliver to R. J. O'Brien 1/8 minerals, December 4, 1922. Tr. p. 145. Sale, R. J. O'Brien to E. L. Wagon, 1/24 minerals, July 30, 1923. Tr. p. 150.

At that time, E. L. Wagon was married to Minnie Reid and the mineral interest acquired by him fell into the community existing between them. Minnie Reid Wagon died intestate on June 4, 1936, leaving as her sole heir, the minor, Edward C. Wagon, and the minor inherited from his mother a 1/48 interest on that date. Tr. p. 254.

R. O. Roy and the minor, Imogen Mading, rely upon the following facts and the legal results flowing therefrom, in vindication of their asserted mineral interest:

First, the sale from Cox to Glen E. McFadin of one-half of the minerals on September 21, 1922, created a mineral servitude indivisible in its nature.

· Second, the drilling of the well by The Ohio Oil Company on said acreage, commenced on November 21, 1925, and drilled to a depth of 5,957 feet where it was abandoned on September 16, 1926, interrupted the running of the prescription and said prescription began to run anew, on and after that date.

Third, that an interest in the original servitude, created in favor of McFadin on September 21, 1922, was acquired by A. D. Mading on November 14, 1923, and ½ of this interest was inherited by the minor, Imogen Mading, on the death of her mother on March 5, 1927, six months after the well referred to was abandoned. Since the minor was born on the 23rd day of February, 1927, she is at this time 13 years and 8 months of age. Her father died in September, 1934, and on said date the minor inherited the interest now asserted by her from him, some eight years after said well was abandoned. The interest of the minor in the original servitude created in favor of McFadin having been acquired through inheritance from her

parents, the minor's ownership has suspended the operation of the prescription, not only as to the minors, but as to the major co-owners with the minors of the original servitude created by the sale to McFadin. On September 9, 1936, J. P. Evans sold to W. J. Hobby, Jr., minor, a 21/256 interest in the 1/2 interest in the minerals sold by Warren Cox, owner of the sixty-acre tract, to Glen E. McFadin, and makes the same contention. Sample v. Whitaker, 172 La. 722, 135 So. 38; Ford v. Williams, 189 La. 229, 179 So. 298; State ex rel. Bourgaux v. Fontenot, 192 La. 95, 187 So. 66.

In Sample v. Whitaker, 172 La. 722, 726, 135 So. 38, the court held that the mineral servitude reserved by Sample during the life of his wife belonged to the community; that upon her death her half therein passed by inheritance to her minor children, and that, therefore, at the institution of the suit, the mineral reservation was owned in indivision by majors and minors, one of whom, at least, is still a minor.

The court first held that prescription there urged, which is the same as here urged, did not run against minors. 172 La. 726, 728, 135 So. 38. Then, after quoting Article 802 of the Civil Code, the court observed at page 729 of 172 La., at page 40 of 135 So.: "This article is the logical sequence of the principle that the rights of servitude are indivisible, a principle which was for the first time incorporated in the Code of 1825 as article 652, and repeated in the Revised Civ.Code of 1870, as article 656, although, as provided by article 657 of the Revised Civ. Code of 1870, which is article 653 of the Code of 1825, the advantages resulting from the servitude may be divided, whenever they are susceptible of division."

Next, in meeting the contention that the mineral reservation was divisible and had been divided by the operation of law, upon the death of Mrs. Sample, so as to divide said servitude and place an undivided one-half thereof in Sample and the other half in his children, the court said at page 729 of 172 La., at page 40 of 135 So.: "While this court has defined, as we have said, a mineral reservation or lease to be a servitude in favor of the person, in the nature of a limited usufruct, it has never defined it to be a usufruct, which is declared by article 538 of the Civil Code to be divisible. We think that it is indivisible in its nature, although the advantages that may be derived from it are divisible. It must stand or fall as a whole. In the case of E. M. Clark v. Tensas Delta Land Co. [172 La. 913], 136 So. 1, this day decided, it is held that a mineral reservation or lease is indivisible, and the reservation or lease is there designated as a servitude."

And, to further emphasize its view that the servitude was an indivisible right and had not been partitioned or divided when half of it passed by law to Sample, and the other half to his children, the court stated at page 729 of 172 La., at page 40 of 135 So.: "While article 802 of the Civil Code, relative to the suspension of prescription where the servitude is owned by both majors and minors, is found among those ar-

ticles of the Code treating of real or predial servitudes, yet its provisions, as observed by plaintiffs, are merely declaratory of a general principle to the effect *that, as to an indivisible real right or servitude, where the prescription applicable to it is suspended as to one of several joint owners of the right, it is suspended as to all of them, and this necessarily so, because an indivisible right or obligation cannot be extinguished in part and exist in part."* (Italics ours.)

The interpretation placed upon Article 802 of the Revised Civil Code in Sample v. Whitaker, 172 La. 722, 135 So. 38, was affirmed in Ford v. Williams, 189 La. 229, 179 So. 298, and reaffirmed in State ex rel. Bourgaux v. Fontenot, 192 La. 95, 187 So. 66, and must be considered as no longer an open question. The argument of counsel for Warren Cox, to the contrary, will be answered later on in this opinion.

■ It follows, necessarily, that the prescription of 10 years liberandi causa, pleaded by Warren Cox, the owner of the 60 acres in question, has been suspended by the minority of Imogen Mading and Edward C. Wagon, both as to the minors, and as to all of the joint owners of the minerals.

(1) Warren Cox as the owner of the land sold to Glen E. McFadin an undivided one-half (1/2) interest in the minerals in the 60 acres involved here. Tr. p. 142. This sale created what, at the trial, was termed the McFadin servitude.

McFadin thereafter sold one-third (1/3) interest in the minerals in the same 60 acres to J. P. Evans and Harry E. Oliver. Tr. pp. 143, 144.

Evans and Oliver then sold an undivided one-eighth (1/8) interest in the minerals to R. J. O'Brien. Tr. pp. 145, 146.

R. J. O'Brien sold an undivided one-twenty-fourth (1/24) interest in the minerals to E. L. Wagon, husband of Minnie R. Wagon. Tr. p. 150.

This purchase is the basis of the title of E. L. Wagon, individually, and of the title of his minor son, Edward C. Wagon, who acquired by inheritance upon the death of his mother, Minnie R. Wagon and, as to this one-twenty-fourth interest, the case is ruled by the decision in Sample v. Whitaker, cited supra.

■ R. J. O'Brien, who acquired from Evans and Oliver an undivided one-eighth (1/8) in the minerals (Tr. p. 145) and had sold only an undivided one-twenty-fourth (1/24) therein to Wagon (Tr. p. 150), sold an undivided one-twelfth (1/12), which was all he then had, to O'Brien Bros., Inc. (Tr. pp. 151, 152). Thereafter, O'Brien Bros., Inc., sold the same one-twelfth (1/12) interest in the minerals to H. A. O'Brien (Tr. p. 157), who, in turn, donated this same one-twelfth (1/12) interest to the minors, Margaret Mary O'Brien and Caroline Ann O'Brien, the nieces of the donor, because of the love and esteem had for the donees. The father, J. C. O'Brien, represented the minors in this transaction, and accepted the donation for them. Tr. p. 158. This donation is dated *September 11, 1936.* The deep test well drilled by The Ohio Oil Company on November 21, 1925, was abandoned as a dry hole on *September 16, 1926,* and a release was executed by The Ohio Oil Company on August 13, 1929. Tr. pp. 248 and

249. We have already held in this opinion that the drilling of this deep test well interrupted the running of the liberative prescription of 10 years against the mineral servitude created by the sale of Warren Cox to Glen E. McFadin under date of September 21, 1922, covering a one-half interest in the minerals, and that prescription began to run anew against said servitude on and after said date, *September 16, 1926.*

The prescription of 10 years liberandi causa therefore accrued on *September 16, 1936,* unless interrupted by the minority of a co-owner.

The donation was made by H. A. O'Brien to the minors, Margaret Mary O'Brien and Caroline Ann O'Brien, on *September 11, 1936,* or five days before the prescription of 10 years had accrued.

Able counsel for these minors makes the following statement in their brief as to the donation in question: "We pause to admit here, as we did below (Tr. bottom p. 255) that no point is made *that the minority of the donees in the above donation suspended prescription;* that if prescription *had otherwise accrued,* that then it accrued against these donees just as though they were majors. Our position is *that if this donation be invalid,* the title would still be in the donor, H. A. O'Brien, and that prescription had not run against him because he was a co-owner in the McFadin servitude with Edward C. Wagon, a minor, and with the other minor children who owned an interest in this servitude, as will appear from the record and other briefs filed herein." (Italics ours.)

Under the decisions of this court, his contention is correct.

On March 1, 1924, Warren Cox sold to T. G. Hibbler one-fourth (1/4) interest in the oil, gas and other minerals in and under the sixty acres of land owned by him and described as the S.E. 1/4 of S.E. 1/4 and E. 1/2 of S.W. 1/4 of S.E. 1/4 of Section 23, Township 21 North, Range 10 West, subject to whatever rights that might exist in the other parties to the litigation. T. G. Hibbler made various sales of interests in his purchase from Cox, as follows:

1. To W. W. Newcomb, March 4, 1924, 1/28th of the oil, gas and minerals under the sixty acres. Tr. p. 165.

2. To R. H. Iler, March 4, 1924, 1/28th interest in the oil, gas and other minerals under the sixty acres. Tr. p. 167.

3. To W. C. Marshall, March 4, 1924, 1/28th interest in and to the oil, gas and other minerals under the sixty acres. Tr. p. 168.

4. To J. B. Ardis, March 4, 1924, 1/28th interest in oil, gas and other minerals under the sixty acres. Tr. p. 170.

5. To C. B. Hodges, Jr., March 4, 1924, 1/28th interest in and to the oil, gas and other minerals under the sixty acres. Tr. p. 171.

6. To W. H. Hodges, Jr., March 4, 1924, 3/56ths interest in and to the oil, gas and other minerals under the sixty acres. Tr. p. 173. T. G. Hibbler retained for himself the remaining 1/56th interest in the oil, gas and other minerals under the sixty acres. He died December 9, 1931, without issue and leaving his entire estate to

his widow, Mrs. Maymie Whitaker Hibbler. Tr. p. 219.

J. B. Ardis died May 6, 1935, leaving a will by which he named as residuary legatees of his estate, his three grandchildren, Virginia, Betsey and Bryan Ardis Frame. The wording of the disposition is as follows: "The balance is to go to Harvey J. Frame, Trustee for my three grand children, Virginia, Betsey and Bryan Ardis Frame." Tr. p. 190.

On the petition of the executors of the will, W. W. Newcomb, George H. Mills and Harvey J. Frame, the First Judicial District Court of Caddo Parish recognized J. B. Ardis' three grandchildren as his residuary legatees in the following words: "It is ordered, adjudged and decreed that Virginia Frame, Betsey Frame and Bryan Ardis Frame, residents of Waukesha, Wisconsin, be and they are hereby recognized as residuary legatees under the last will and testament of decedent, and as sole heirs at law of decedent, and as such they are hereby ordered placed in possession of the following described property." Tr. p. 205.

Betsey Frame was born June 29, 1916 (Tr. p. 229), Bryan Ardis Frame was born May 29, 1919 (Tr. p. 231), Harvey J. Frame qualified as guardian or tutor of his minor children at his domicile in Waukesha, Wisconsin, and later qualified as such in Caddo Parish, Louisiana (Tr. pp. 209 to 213).

R. H. Iler died December 13, 1936, and his interest was succeeded to by his widow, Mrs. Essie Iler, and his daughter, an emancipated minor, Miss Sallie Iler. Tr. p. 174.

We have already decided that the well drilled by The Ohio Oil Company on the land in question, which was begun November 21, 1925, and abandoned as a dry hole September 16, 1926, interrupted the prescription then running, and that prescription began to run anew September 16, 1926. The next interruption by drilling occurred August 2, 1937, when The Ohio Oil Company began the drilling of S. P. D. Coil and Warren Cox well Number One.

Inasmuch as this well produced oil in paying quantities and is still producing, the sole question is: Did ten years prescription liberandi causa run between September 16, 1926 and August 2, 1937? Between these two dates, ten years, ten months and seventeen days had elapsed, and the prescription would have run if it had not been suspended, in May 6, 1935, by the death of Colonel J. B. Ardis and the inheritance by his granddaughters, Betsey Frame and Bryan Ardis Frame, of an undivided portion of the minerals previously owned by Colonel Ardis. These two children were both minors at the time of Colonel Ardis' death. Betsey Frame reached her majority June 29, 1937. Bryan Ardis Frame reached her majority on the 29th day of May, 1940.

The defendant, Warren Cox, bases his plea of prescription of ten years liberandi causa on three contentions, namely:

First: That T. G. Hibbler acquired from Warren Cox a servitude covering an undivided one-fourth interest in the oil, gas and other minerals in the land in question; that the ownership of this servitude was irrevocably fixed in T. G. Hibbler and that he could transfer no part of the title and no interest in the title to any other person; and that the law of prescription

should be applied solely to the state of facts applying to T. G. Hibbler and his heirs and not to his transferees and their heirs. The contention is made that T. G. Hibbler could sell only a beneficial interest in the servitude but could part with no individual interest therein.

Second: The contention is that the servitude acquired by T. G. Hibbler from Cox was indivisible and remained indivisible until Hibbler sold interests therein, at which point the servitude became divisible and was split up into a number of servitudes, the law of prescription being applied to each, separate and apart from the other. In Sample v. Whitaker, 172 La. 722, 135 So. 38, the transfer of the interest of Mrs. Sample in the original servitude was effected by inheritance. The minors became co-owners not as original purchasers, or co-purchasers of the servitude, but became co-owners by inheritance. Nevertheless, the court held that their minority suspended prescription as to all co-owners, majors and minors.

In the recent case of Ford et al. v. Williams et al., 189 La. 229, 179 So. 298, the original servitude was purchased by R. W. Williams. Williams sold an interest to A. D. Mading. Mading died, leaving minor children. Prescription of ten years liberandi causa was pleaded. The plea was overruled as to all co-owners of the original servitude, both majors and minors.

In the case of State ex rel. Bourgaux et al. v. Fontenot, Clerk of Court, et al., 192 La. 95, 97, 187 So. 66, a mandamus proceeding was instituted "to cancel and erase from the conveyance records of his office the mineral reservation contained in a deed dated August 24, 1907, from William L. McFarlain to Emile J. Bourgaux, one of the relators herein and author in title of the other relators, and also certain mesne conveyances made of said reservation by the heirs of William L. McFarlain or their assignees, on the ground that the mineral reservation being in the nature of a servitude expired August 24, 1917 for nonuse."

More than thirty years had elapsed from the time of the reservation of the servitude until the suit was filed. During all of the period there were minor co-owners and one interdict. The original servitude, or interest therein, had been transferred and assigned to various parties. A plea of ten years prescription liberandi causa was filed, which was overruled by the court, it being held that the minority and curatorship of the minors and of the interdict, suspended the prescription so as to preserve the original servitude, both as to majors and to minors. This case was decided in the Supreme Court February 6, 1939.

Mineral servitudes are property rights, in fact, the most valuable property in the State. Ford et al. v. Williams et al., 189 La. 229, 179 So. 298.

Counsel for Warren Cox admits that such property may be purchased or acquired by co-owners or joint owners, though the same is expressly declared by The Civil Code and by the decisions of this court to be indivisible. Yet, he takes the position that no one of these purchas-

ers can sell and convey title to his undivided interest in the indivisible asset. If a mineral servitude is a property right, though indivisible, then an undivided interest in such property may be sold and disposed of in the same manner as any other property right in an indivisible object may be disposed of, and yet the property or the property right will continue to be indivisible. The only thing that occurs is that one joint owner in an indivisible property is replaced by the vendee or transferee, who then becomes a joint owner in the indivisible property in the place of his vendor.

If the argument of counsel for Warren Cox is further accepted to the effect that the title of a servitude remains in the original purchaser, as contended by him, then, as a corollary to such ownership, the original purchaser would control the development or use of the servitude. We have in this case a situation where the original purchaser, Glen McFadin, disposed of all interest in the servitude bought by him from Cox shortly after acquiring it. Thereafter, he had no interest to develop and use the servitude yet, under counsel's argument, his ownership still remained and the question of the application of prescription liberandi causa would solely depend upon his acts and upon whether or not prescription was suspended by the intervention of his minor heirs after he had parted with all interest therein. The mere statement of the situation shows the weakness of such argument.

Counsel for Cox likewise recognizes the article of the Civil Code and decisions of

this court which state that a servitude is indivisible but, at the same time, he argues that it can become divisible. He argues that, when the original purchaser (or purchasers) of a servitude sells an interest in the same, then it is divisible and, instead of one servitude, it may become several. There is no justification either in the Civil Code or in the decisions of this court for that viewpoint and none has been cited.

■ Third: The third contention is that the stipulation in the will of Colonel J. B. Ardis that: "The balance is to go to Harvey J. Frame, Trustee for my three grandchildren, Virginia, Betsey and Bryan Ardis Frame," constituted a trust vesting the title of all of the residue estate of Colonel Ardis in Harvey J. Frame, Trustee, and that, Harvey J. Frame, Trustee, being a major then and now, the minority of the children cannot be considered on a question of prescription. Upon petition of the executors, among whom was Harvey J. Frame, The First Judicial District Court sent them in possession of the residuary estate of Colonel J. B. Ardis as such, in the following words: "It is ordered, adjudged and decreed that Virginia Frame, Betsey Frame and Bryan Ardis Frame, residents of Waukesha, Wisconsin, be and they are hereby recognized as residuary legatees under the last will and testament of the decedent, and as sole heirs at law of the decedent, and as such they are hereby ordered placed in possession of the following described property." Tr. p. 205.

There was no claim at the time that a trust had been created. The court did not

recognize that a trust had been created. The alleged trustee did not claim that a trust had been created, and the court specifically recognized these three children as the residuary legatees in their own names and sent them into possession as such.

Defendant, Warren Cox, claims that a trust was in fact created under Act No. 107 of 1920, *and that title to the residuary estate of Colonel Ardis actually vested in Harvey J. Frame, Trustee, and that, Harvey J. Frame being a major at the time and still being a major, the minor children would have no interest and prescription would not apply.* It is further contended that the title was split; the legal title being in Harvey J. Frame, Trustee, and a beneficiary title in the children.

Tulane Law Review, vol. 10, page 116, citing Bogert, on Trusts (1921) 298, Par. 87, states: "From the time when trusts were first recognized as imposing an enforcible obligation on the trustee, the trustee or feoffee for use, as he was first called, has held the trust property in a representative capacity."

In Buck v. Larcade, 183 La. 570, at page 578 of the opinion, 164 So. 593, at page 595, it is held:

"An estate in this state may be divided into naked ownership and usufruct, and a separate title as to each may be vested in different persons, under existing laws.

"But there are no 'trust estates' recognized under our laws, with such new tenures of property as *'legal title'* in one person or entity and *'equitable title'* in another person or entity."

This holding was made during the operative period of Act No. 107 of 1920.

The trustee was merely a representative of these minor children who were the real owners of the property. The prescription of ten years liberandi causa was suspended on May 6, 1935, the date of the death of Colonel J. B. Ardis, by reason of the inheritance by his two minor grandchildren, Betsey Frame and Bryan Ardis Frame, prior to the lapse of ten years. Also, production was found on the property in August, 1937, prior to the lifting of the suspension.

Our conclusion is that the prescription of ten years liberandi causa was suspended on May 6, 1935, the date of the death of Colonel J. B. Ardis, by reason of the inheritance by his two minor grandchildren, Betsey Frame and Bryan Ardis Frame, prior to the lapse of ten years; that production was found on the property in August of 1937, prior to the lifting of said suspension, and that, therefore, the plea of prescription filed by Warren Cox should be rejected not only as to said minor children, but as to all co-owners of the Hibbler purchase.

Judgment was rendered in the Twenty-sixth Judicial District Court for the Parish of Webster, overruling the plea of prescription herein filed by the defendant, Warren Cox, and rejecting the demands of the defendant.

It was further ordered, adjudged and decreed that the following named parties be decreed to be the owners of the three-fourths mineral interest involved in this suit:

R. O. Roy ................. 1/6 M. I.
Imogen Mading, minor...... 1/48 M. I.
Harry E. Oliver........... 27/256 M. I.
W. J. Hobby, Jr., minor.... 21/256 M. I.
Edward C. Wagon, minor... 1/48 M. I.
Edward L. Wagon......... 1/48 M. I.
J. C. O'Brien, administrator
   of the estates of Margaret
   Mary O'Brien and Caro-
   line Ann O'Brien ........ 1/12 M. I.
W. H. Hodges, Jr........... 3/56 M. I.
Virginia Hamilton Frame... 1/84 M. I.
Betsey Frame and Bryan Ar-
   dis Frame ............... 2/84 M. I.
C. B. Hodges, Jr............ 1/28 M. I.
Miss Sallie L. Iler.......... 1/56 M. I.
Mrs. Essie Iler............ 1/56 M. I.
W. C. Marshall............ 1/28 M. I.
W. W. Newcomb........... 1/28 M. I.
Maymie Whitaker Hibbler.. 1/56 M. I.

It was further ordered, adjudged and decreed that the costs of this proceeding be borne by the mass and that the funds herein deposited in the registry of this court, after the payment of all costs of this proceeding, be distributed to the above named parties in the proportions hereinabove set forth. Tr. p. 244.

Judgment affirmed.