The plaintiff company brought in a producing oil well on a tract of land in Jefferson Davis Parish on October 5, 1944. As there were rival claimants to part of the royalty interests in the production, the company filed a concursus proceeding against these rival claimants and deposited in court the amount of these disputed royalty claims. There is no dispute as to the right of the plaintiff company to produce oil from the land.
The real controversy is between defendant Philibert Lognion on the one side, and defendants Fred S. Weber and the widow and heirs of Victor Weisse on the other side, both of these sides claiming part of the disputed royalty rights. Most of the facts are either conceded or proven to the extent that no question seems to be raised relative thereto. While Mrs. Elodie Lognion Roy was made a defendant in the suit, she made no appearance and judgment was rendered against her by default.
On February 10, 1930, Mrs. Elodie Lognion Roy sold to her brother, Philibert Lognion, an undivided 1/34 interest in and to the lands on which the oil well is located, and she reserved all the oil, gas and other minerals in or which may be produced from said land. Mrs. Roy leased to a third party her interest in the minerals with the usual reservation of 1/8 of the production, and thereafter, on August 17, 1937, she sold to Fred S. Weber 1/514 of all the mineral royalty interests of the whole of any oil, gas or other minerals, except sulphur, that may be produced from said lands; delivery of said royalties to be made to the purchaser Weber in the same manner as is provided for the delivery of royalties by any present or future mineral lease affecting said lands. There is also included in this transfer to Weber the following provision:
"This sale and transfer is made and accepted subject to an oil; gas, and mineral lease now affecting said lands but the royalties hereinabove described shall be delivered and/or paid to the purchaser, his heirs and assigns, out of and deducted from the royalties reserved to lessor in said lease. This sale and transfer however, is not limited to royalties accruing under the lease presently affecting said lands but the rights herein granted are and shall remain a charge and burden on the land herein described and binding on any future owners or lessees of said lands, and, in the event of the termination of the present lease, the said royalties shall be delivered and/or paid out of the whole of any oil, gas, or other minerals produced from said lands by the owner, lessee, or anyone else operating thereon.
"The grantor herein reserves the right to grant future leases affecting said lands so long as there shall be included therein, for the benefit of the grantee herein, his heirs and assigns, the royalty rights herein conveyed; and the grantor further reserves the right to collect and retain all bonuses and rentals paid for, or in connection with, any future lease, or accruing under the lease now outstanding."
On March 17, 1939, Mrs. Roy transferred to Victor Weisse 1/1088 of the whole of any oil, gas or other minerals, except sulphur, to be produced from said land with the same provisions as contained in the deed to Weber above mentioned. A month after this transfer was made to him Weisse died, leaving a widow, some minor children and a minor daughter emancipated by marriage. This married daughter died in June, 1939, leaving a minor child, Kenneth Frederick Streater, Jr., born June 1, 1939.
It is the contention of Philibert Lognion that the reservation of Mrs. Roy of all the minerals in and under the undivided interest, in the land sold to him in February, 1930, was a servitude imposed on the land and that this servitude prescribed for non-use in ten years, or on February 10, 1940. It is conceded that no effort was made to exercise this servitude within the ten year period either by Mrs. Roy or by any one of her lessees. Weber and those claiming under the transfer to Weisse contend that *Page 847 
the running of prescription on the servitude imposed on the land sold to Philibert Lognion was interrupted by reason of the minority of Weisse heirs and the minority of the Streater child who inherited the interest of its mother in the royalty rights conveyed to Weisse; that the interruption of prescription by these minors had the effect of interrupting prescription in favor of major co-proprietors.
The trial judge held that the servitude retained by Mrs. Roy prescribed for non-use within the prescriptive period, and the royalty interests transferred to Weber and Weisse were dependent upon and subject to the exercise of that servitude and these royalty rights fell when prescription accrued. He therefore held that Philibert Lognion held the land free from this servitude and was entitled to receive the production royalty under the lease he had given in September, 1943, and which lease was held by the plaintiff company. Weber and the widow and heirs of Weisse have appealed.
[1] What Mrs. Roy retained in her deed to Philibert Lognion in February, 1930, was a right to 1/34 of the minerals in and under the land, and this reservation carried with it the right on her part, or on the part of her transferees, to go upon the land at any time within a period of ten years and explore for oil, and to reduce to possession and ownership her fractional part of the oil which might be taken from the land. This right on her part was in the nature of a personal servitude to go on the land and explore and possess the oil produced thereon, and this servitude prescribed in ten years from February 10, 1930, if prescription was not suspended or interrupted on account of the minors. Clark v. Tensas Delta Land Co., 172 La. 913,136 So. 1; Palmer Corporation et al. v. Moore, 171 La. 774,132 So. 229.
[2] A servitude itself is indivisible, but the advantages and benefits arising from the servitude may be divided, if susceptible of division. Civil Code, Articles 656 and 657. Mrs. Roy did not undertake to split up and transfer part of her servitude on the land to Weber and Weisse. In fact, she had already transferred the servitude, or the right to go on the land and explore for oil, by granting a lease to someone else. The servitude remained in Mrs. Roy or in her lessee who alone had the right to exercise the servitude against the land owned by Philibert Lognion. All that Mrs. Roy transferred to Weber and Weisse was the right to participate in a certain proportion in the royalties which she reserved in her lease or leases to others if and when these lessees produced oil on the land. She vested her lessees with her rights under the servitude and reserved as a benefit for herself a part of the oil which these lessees might produce by the exercise of this servitude. These advantages could be divided by her and transferred to whomsoever she saw fit. Her advantages and benefits were dependent on the exercise of the servitude on the part of her lessees. The fractional parts of these advantages which she transerred to Weber and Weisse were likewise dependent upon the exercise of the servitude by the one having the right to exercise it. Neither Weber nor Weisse could enforce my rights under the servitude resting on the land of Philibert Lognion.
A servitude prescribes by non-usage for a period of ten years. Civil Code, Articles 789 and 3529. However, this prescription does not run against a minor. Civil Code, Articles 3522 and 3554. And prior to the passage of Act No. 232 of 1944, where a mineral servitude was owned by majors and minors the suspension of prescription in favor of the minors inured to the benefit of the major co-owners, as the servitude is indivisible. Civil Code, Article 802.
To support their contention appellants rely largely on the following cases: Sample et al. v. Whitaker et al., 172 La. 722,135 So. 38; Ford et al. v. Williams et al., 189 La. 229,179 So. 298; State ex rel. Bourgaux et al. v. Fontenot, Clerk, et al., 192 La. 95, 187 So. 66; Dennig v. Whitworth et al., La. App., 192 So. 732.
However, there is a marked difference in the facts of the cited cases and the facts in the present case. In all of the cited cases the questions involved the interruption of the ten year prescription for the nonusage of a servitude, while in the present case the question involves the suspension of prescription not against a servitude, but a right *Page 848 
arising out of and dependent upon a servitude. If Mrs. Roy had transferred to Weber and Weisse the servitude or the right to explore for oil on the land as she invested in the lessees who exercised that right, then the cited cases would be controlling and the minority of the Weisse heirs would have suspended the running of prescription against this servitude from the date of the death of Weisse and his daughter. The transfers from Mrs. Roy to Weber and Weisse, particularly that part which is quoted above, indicate clearly that Mrs. Roy did not transfer the servitude for the reason that she specially stipulated in these transfers that they were made subject to a lease then in force by which she had vested this lessee with the right to explore for oil, and provided that in case the present lease terminated, the royalties which she transferred to Weber and Weisse out of her retained royalties should be paid out of any oil produced from the lands by herself, her lessee, or anyone else operating on the land.
The minors had no more rights in these royalties than did Weber and Weisse, and admittedly the latter could not have exercised the rights under the servitude to explore for oil. The reason for suspending prescription in favor of minors is because they do not have the capacity to enforce and exercise a right of servitude as do majors, but where they could do nothing to enforce the right of servitude no more than could their major co-owners the reason for suspending prescription in their favor no longer exists. In fact, there was no prescription running against their right to participate in a part of the oil extracted from the land separate and apart from the right of servitude which made it possible for them to look forward to the benefits which would flow to them if and when the right of servitude was exercised by someone else.
In the cases of Ford et al. v. Williams et al. and State ex rel. Bourgaux et al. v. Fontenot, Clerk, et al., supra, the court held that while the usufructuary of a mineral servitude may be entitled to use and enjoy the fruits of the servitude, his failure to exercise the right did not have the effect of causing prescription to continue running against the naked ownership in a minor. This ruling is based on the ground that the Codal articles specifically provide that prescription does not run against a minor. The difference in the cited cases and the present case is obvious. In the cited cases there was a servitude which could be exercised at any time by the owner, and during the time that no one exercised the right the ten year prescription was running against the one entitled to enjoy the right except minors, against whom the law says prescription does not run, even though some one else had the right to exercise the right in the place of or on behalf of the minors. In the present case there was no servitude to be exercised by either the majors or the minors under the Weber and Weisse transfers. Had a parent or any other person enjoyed a usufruct on the royalty interests of the Weisse minors, there was nothing that he could use and enjoy until and unless the owners of the servitude produced oil on the land and over whose actions in that respect the usufructuary could have exercised no control whatever.
[3] In the recent case of Bennett v. Robinson, La. App.,25 So.2d 641, 643, our brothers of the Second Circuit used the following language in explaining the difference between a sale of a royalty interest and a sale of the minerals in land: "The essential difference between a sale of a royalty interest and a sale of a mineral interest in land leased for minerals, is that the purchaser of the royalty interest receives nothing under the lease unless profitable production is obtained, whereas under a mineral sale the purchaser, unless there is a stipulation to the contrary, is titled to receive his proportionate part of renewal rentals under the lease and like proportion of the price of subsequent lease or leases on the land and renewals paid thereunder."
The conclusion We have reached makes it unnecessary to consider the special plea of prescription filed by Philibert Lognion under the provisions of Act No. 232 of 1944.
For the reasons assigned, the judgment appealed from is affirmed; appellants to pay the costs of the appeal, and all other costs to be paid in accordance with the judgment from which the appeal was taken.
 *Page 134