64 So.2d 232

**MAYS et al. v. HANSBRO et al.**

No. 40263.

March 23, 1953.

Bullock & Bullock, Shreveport, for plaintiffs-appellants.

John B. Files, Pyburn, Smith & Giddens and Simon Herold, Shreveport, for defendants-appellees.

PONDER, Justice.

In this suit the plaintiffs alleged that the defendants' mineral rights have become extinguished by non-user and that their deed to same is operating as a cloud on plaintiffs' title. The defendants answered setting up title to the minerals, thereby converting the suit into a petitory action. After due hearing, the trial court arrived at the conclusion that the servitude had been exercised by the drilling of wells and the production of gas thereon and gave

judgment rejecting the demands of plaintiffs and recognizing the defendants to be the owners of the mineral interest in dispute. The plaintiffs have appealed.

J. H. Bryson, the fee title owner, executed an oil and gas lease to Lester Wilson, trustee, on June 12, 1924 on the S½ of fractional section 18, and the W½ of the W½ of Section 16, T. 17 N, R. 16 W. located in Caddo Parish and containing 250 acres, more or less. This lease was later assigned to the Lorraine Syndicate. On October 13, 1924, J. H. Bryson conveyed to W. C. Meares one-half of the minerals in a tract of land containing 874.62 acres, located in Caddo Parish, which included the 250 acres previously leased to Wilson and later assigned to the Lorraine Syndicate. Through mesne conveyances, the defendants are presently the owners of the Meares servitude or one-half of the minerals lying under the 874.62 acres. The plaintiffs in this suit are the fee title owners by mesne conveyance of the 250-acre tract of land covered by the Lorraine Syndicate lease which land is included in the Meares servitude.

Three wells were drilled on this 250 acres of land by the Lorraine Syndicate. Two of the wells were drilled in the year 1924; they produced gas as follows: one well produced gas until sometime in the year 1940, and the other until the month of September, 1941. A third well was brought in as a gas producer in 1929. This well continued to produce until 1937, at which time it was abandoned. On June 19, 1947, the Commissioner of Conservation issued an order for the unitization of all the property interests within the area and providing for but one well to a unit. On September 29, 1947 a drilling unit containing 551.72 acres known as the Wappler Unit, including some of the 250 acres of land owned by the plaintiffs, was formed. It appears that there was a producing well on the land embraced in the unit prior to the unitization. This production was from lands that were not covered by the Meares servitude. This well is still producing gas. A similar situation is presented in another unit known as the Mays unit. It is not necessary for the purpose of this decision to recite the facts pertaining to the production from these units because there was production from the Lorraine Syndicate Lease up until September, 1941, less than ten years from the date that this suit was filed.

The appellants contend that the Lorraine Lease became extinguished when it failed to produce gas in paying quantities and that the production of gas in less than paying quantities will not interrupt the prescription then running against the Meares servitude. They cite no authority to support this contention. The authorities cited in their brief deal with suits where production of oil or gas in less than paying quantities was held to be a ground for the annulment of a lease. We know of no authority and none has been cited where a lease automatically becomes extinguished when gas

is produced in less than paying quantities. But be that as it may, we are not here concerned with the annulment of the lease because this suit is not for that purpose. The sole issue presented in this case is whether or not the production of gas from the land covered by the Meares servitude interrupted the then running prescription. It is unimportant whether this production was in paying quantities so long as there was some production or use of the servitude. A servitude does not become extinguished except by non-usage. Article 789, LSA–C.C. and Article 3546, LSA–C.C. This court held in Lee v. Giauque, 154 La. 491, 97 So. 669 that the development does not have to be successful in order to interrupt the prescription and preserve the servitude for another ten years and that the exercise of any portion of a servitude on a continuous tract of land preserves the servitude over the whole tract. Keebler v. Seubert, 167 La. 901, 120 So. 591; Lynn v. Harrington, 193 La. 877, 192 So. 517; Ohio Oil Co. v. Cox, 196 La. 193, 198 So. 902; Hunter v. Ulrich, 200 La. 536, 8 So.2d 531; Standard Oil Co. of La. v. Futral, 204 La. 215, 15 So. 2d 65.

Gas was produced under the Lorraine Lease up until September, 1941 at which time the servitude ran anew. Goree v. Sanders, 203 La. 859, 14 So.2d 744. This suit was brought on March 16, 1950 before ten years had elapsed. Therefore, the Meares servitude had not become extinguished by ten years non-use. Having

arrived at this conclusion, it is unnecessary for us to pass upon whether or not the production from the Wappler and Mays units interrupted the then running prescription against the Meares servitude.

For the reasons assigned, the judgment is affirmed at appellants' cost.

HAWTHORNE, J., absent.